# JOANNIE FREELAND v. FRANCES WILLIAM-
# SON et al., Appellants.

### Division Two, May 18, 1909.

1. **JUDGMENT AS ENTIRETY: Resulting Trust: As to Non-Complaining Parties.** In a suit in equity, for instance, a suit by a widow to establish a resulting trust in land on the ground that the deed by mistake vested the legal title in her deceased husband, the doctrine of the entirety of judgments does not apply. It may be upheld as to some of the defendants and reversed as to others. And where a part of the defendants appeal they have no right to have the judgment reversed because some non-complaining defendants were not properly served; and it will not be reversed as to any, if those complaining were properly served and it is right as against them.

2. **WIFE AS WITNESS.** In a suit by a widow to establish a resulting trust in land on the ground that her father furnished the money by which it was purchased and by mistake her deceased husband instead of herself was made the grantee, she is a competent witness. She is a real party in interest, and her testimony does not relate to a contract between her and her husband, but her right depends upon the payment of the money by her father for her benefit, under an agreement between her father and the vendor.

3. **NO OBJECTION TO EVIDENCE.** Where an inspection of the record fails to disclose that any objection was made or any exception was saved to the reception of testimony by witnesses as to the contents of letters, objections to such evidence cannot be considered on appeal.

4. **ESTOPPEL.** In order to constitute an equitable estoppel there must have been, not only a false representation and concealment of the facts, but they must have been made knowingly by the one to be estopped and believed and acted upon by the one claiming the estoppel. Plaintiff cannot be estopped to set up against the children of her husband a resulting trust in farm lands, by mistake conveyed to her husband instead of to herself, by the fact that certain town lots were purchased by her husband and conveyed to her, if her money paid for the lots, even though there is some evidence that the lots were conveyed to her in satisfaction of all claims by her against her husband.

5. **RESULTING TRUST: Sufficient Evidence.** Evidence showing that plaintiff's father furnished the money that bought the

land, that it was bought by him for her, that her husband and all his children knew these facts, that the title was taken in the husband's name without her knowledge and consent, and that she never discovered that fact until after his death and just prior to bringing the suit, although it had been so deeded thirty-four years before his death and they had resided upon it, clearly establishes a resulting trust in her in a suit against their children.

6.  ————: **Limitations: Within Three Years After Disability Removed.** Where the deed was made in 1869 to plaintiff's husband and he died in January, 1903, and she did not discover that it vested the title in him until after his death, a suit brought in August, 1905, to have a resulting trust declared in her favor, was not barred by limitations. She was under legal disability during coverture, and the statute did not begin to run until the knowledge of the conveyance to him came to her.

7.  ————: **Estoppel: Land Inventoried to Husband.** The fact that plaintiff was the administratrix of her husband's estate and in her inventory listed the land as his, should not have much weight against the clear and undisputed evidence showing the existence of a resulting trust in her favor.

Appeal from Holt Circuit Court.—*Hon. Wm. C. Elli-son*, Judge.

AFFIRMED.

*T. C. Dungan* and *John W. Stokes* for appellants.

(1) The court erred in making a finding and rendering a decree against all of the defendants, four of whom had not been served with summons or had other legal notice and not appearing in the action. Holt County v. Harmon, 59 Mo. 165; Jasper County v. Wadlow, 82 Mo. 172. (2) The court erred in permitting plaintiff to testify and her evidence was inadmissible because she was one of the original parties to the cause of action and the other party, her husband, is dead. Sec. 4652, R. S. 1899; Angell v. Heater, 64 Mo. 142; Ring v. Jamison, 66 Mo. 429; Curd v. Brown, 148 Mo. 95; Hach v. Rollins, 158 Mo. 190; Smith v. Turley, 9 S. E. 46. (3) Plaintiff was estopped to claim said

land or the money of plaintiffs invested therein after she accepted the deeds for the Maitland property with the agreement and understanding with her husband that such property should be in lieu of, and in full satisfaction for her money used, if any, in buying said farm. Burdett v. May, 100 Mo. 18. (4) Plaintiff was precluded and estopped from claiming the land or the money by reason of her acquiescence and the long lapse of time after the alleged trust was created and her laches in not asserting her claim by instituting and prosecuting her action, upwards of thirty-five years having elapsed. Taylor v. Blair, 14 Mo. 440; Mouman v. Talbott, 55 Mo. 398; Wells v. Perry, 62 Mo. 576; Stevenson v. Saline Co., 65 Mo. 430; Joyce v. Growney, 154 Mo. 262; Smith v. Turley (W. Va.), 9 S. E. 46; Burdett v. May, 100 Mo. 18; Lenox v. Harrison, 88 Mo. 497. (5) Plaintiff's action was clearly barred by the Statutes of Limitation, more than ten years having elapsed since her alleged cause of action accrued and more than twenty-four years having elapsed since her said alleged cause of action accrued, and more than three years having elapsed after any disability she may have had, if any, had been removed. Hinkle v. Lovelace, 204 Mo. 227; Burdett v. May, 100 Mo. 18; Landis v. Saxton, 105 Mo. 481; Reed v. Palmer, 145 Mo. 341; Winn v. Riley, 151 Mo. 61.

*R. B. Bridgeman, Charles F. Booher* and *John Kennish* for respondent.

(1) Appellants complain that the court erred in rendering a decree against all of the defendants, four of whom had not been served with summons, or had other legal notice, and not appearing to the action. (a) Appellants do not challenge the service as to themselves. They appeared and filed an answer and participated in the trial of the cause. The question as to the sufficiency of the service of defendants, other

than appellants, is not properly before this court for review. (b) If the non-resident defendants were not properly brought before the court and there was a defect of parties defendant, the defendants who appeared and answered waived such defect by not raising the question by demurrer or answer. R. S. 1899, secs. 598, 602; Horstkotte v. Menier, 50 Mo. 160. (2) Appellants were duly served, filed answer and contested plaintiff's suit, and it cannot now reasonably be said that they were prejudiced because another defendant was not properly served with process. Informalities and irregularities in the summons or process, or return thereof, as complained of in this case, are cured by said Sec. 672, R. S. 1899. Doan v. Boley, 38 Mo. 449; Hensford v. Hensford, 34 Mo. App. 292; Andrews v. Buckbee, 77 Mo. 428. (3) The cases cited by appellants in support of the proposition that a judgment is an entirety, and if void as to one is void as to all, applied to judgments in actions at law in cases of joint liability, and even in such cases the doctrine has been greatly modified since the time of the decisions cited by appellants. Stotler v. Railroad, 200 Mo. 149; Patterson v. Yancey, 97 Mo. App. 681; Christopher and Simpson, etc., Co. v. Kelly, 91 Mo. App. 100; Neenan v. St. Joseph, 126 Mo. 99; Bensieck v. Cook, 110 Mo. 173; State ex rel. v. Tate, 109 Mo. 265; St. Louis v. Lanigan, 97 Mo. 175; Bank v. Umrath, 55 Mo. App. 43; Dickerson v. Chrisman, 28 Mo. 134. (4) The court did not err in permitting plaintiff to testify as a witness in her own behalf. Scrutchfield v. Sauter, 119 Mo. 624. (5) There is no question of estoppel in this case. Scrutchfield v. Sauter, supra. As appellants claim title as heirs of John H. Freeland, deceased, it is apparent that the doctrine of estoppel is not applicable to the facts of this case. (6) The evidence clearly established a resulting trust in favor of plaintiff and against the heirs of John H. Freeland, deceased. Hudson v. Wright, 204 Mo. 412;

Owings v. Wiggins, 133 Mo. 633; Scrutchfield v. Sauter, 119 Mo. 625; Seay v. Hesse, 123 Mo. 450; Hdw. Co. v. Horn, 146 Mo. 134; Palmer v. Alexander, 162 Mo. 127; McLeod v. Venable, 163 Mo. 541; Johnston v. Johnston, 173 Mo. 115. (7) Defendants failed to establish the defense of the Statute of Limitations. Buren v. Buren, 79 Mo. 542; Gray v. Yates, 67 Mo. 602; Sutton v. Casseleggi, 77 Mo. 397; Lindell Real Estate Co. v. Lindell, 142 Mo. 61; Mann v. Balfour, 187 Mo. 309.

GANTT, P. J.—This suit was instituted by the respondent, Joannie Freeland, widow of John H. Freeland, to establish a resulting trust in plaintiff in an eighty-acre tract of land described in the petition. The defendants are the eight children of the plaintiff and her said husband, together with the husbands of the married daughters. Two of the defendants, Aretha Swan and her husband, after the death of John Freeland, and before the institution of this suit, had conveyed the supposed undivided interest of the said Aretha Swan in the land in controversy by trust deed to J. E. Weller, as trustee, to secure a loan made to said Aretha Swan and her husband by Charles Chase, the beneficiary of said trust deed, and Weller and Chase were also joined as defendants.

The suit was brought in the circuit court of Holt county to the August term, 1905, and at the January term, 1906, of said court, the cause was tried and a decree rendered divesting defendants, except as to Weller and Chase, of all right, title and interest in and to said land and investing the same in plaintiff, as prayed in the petition.

Of the eight children and defendants only three daughters and their husbands contested the suit in the trial court, and these also alone appealed from the judgment and decree rendered, to this court.

It is alleged in the petition that the plaintiff and John H. Freeland, deceased, were married in the year

1862, and that eight children were born of the marriage, who, with the husbands of the married daughters, are named as defendants; that in the year 1869 plaintiff's father, Andrew Miller, for the purpose of providing the plaintiff, his daughter, with a home and means of support, sent the sum of six hundred dollars to one John Spencer with instructions to invest the same in land as a home and for the use and benefit of the plaintiff, his daughter; that pursuant to said instructions, the eighty-acre tract of land in controversy was purchased with five hundred and fifty dollars of said sum, but that by mistake and error, the deed was made conveying title to John H. Freeland, plaintiff's husband; that the said John H. Freeland paid no part of the purchase price of said land; that the said John H. Freeland with his family continued to occupy, use and enjoy the said land until his death, on the 20th day of January, 1903; that neither plaintiff nor her father, at any time, consented or gave authority that the title to said land should be vested in the said John H. Freeland, and that it was always understood by and between plaintiff and her said husband, during his lifetime, that the said land was the property of plaintiff and of right belonged to her.

It is also alleged that one of the said children, to-wit, Aretha Swan, and her husband, after the death of her father, conveyed her undivided interest to said land to James E. Weller, as trustee for Charles Chase, to secure a loan made by the latter to the said Aretha Swan and her husband. It is also alleged that the defendant, Grover Freeland, was a minor, and plaintiff prayed the court to appoint a guardian *ad litem* to protect and defend the interest of the said Grover Freeland in the suit.

The prayer of the petition was that the defendants be divested of all right, title and interest in the eighty-acre tract of land therein described, and that the same be vested in the plaintiff.

It is further alleged in the petition that three of the heirs, to-wit, Frances Williamson and John Williamson her husband, Laura McMillen and A. V. McMillen her husband, and Lucy Van Dyke and William Van Dyke were non-residents of the State, and prayed that a special summons of process be served on them, as provided by law. Affidavits of non-residence were filed with the petition as to said non-resident defendants.

Frances Williamson, Ella Craytor and Aretha Swan, and their respective husbands, filed separate answer containing several defenses:

1. Denying that plaintiff or her father furnished the money to purchase the land in controversy, or any part thereof, and denying that the deed to said land was by mistake made conveying title thereto to John H. Freeland, and alleging that the money and funds used in the purchase of said land were the property of and furnished by the said John H. Freeland.

2. That defendants, Aretha Swan and her husband, conveyed the undivided interest of the said Aretha Swan to J. E. Weller, as trustee, to secure a loan made by Charles Chase to the said Aretha Swan, and that such conveyance in trust was made in good faith and without knowledge of any claim of title or right by plaintiff.

3. A defense in the nature of an estoppel, on the ground that plaintiff had qualified and acted as administratrix of her husband's estate, and, as such, inventoried and treated the land in controversy as belonging to the estate of her late husband.

4. That John H. Freeland, deceased, purchased certain town property in the town of Maitland, and that such property was deeded to plaintiff in satisfaction of all claims of plaintiff against her husband.

5. That by reason of the long lapse of time since the creation and establishment of the alleged trust,

plaintiff was precluded from asserting her rights against the defendants therein.

6. A defense of the ten-year Statute of Limitations, the twenty-four year Statute of Limitations, and that more than three years had elapsed after any disability that plaintiff may have had, had been removed.

James E. Weller and Charles Chase filed separate answer, alleging that the loan had been made to the defendants, and secured by trust deed, as heretofore stated.

A guardian *ad litem* was appointed by the court to represent the minor defendant, Grover Freeland, and it is shown in the record that the said minor defendant arrived at his majority before the trial, and personally appeared and defended in his own right.

The defendants, Edith Freeland, Rhoda Freeland and Lucy Van Dyke, did not file answer, but were present at the trial and testified as witnesses in behalf of the plaintiff, their mother.

The evidence on the part of the plaintiff tended to prove that her maiden name was Joannie Miller. In 1861, she was married to John Freeland, at Johnsville, Ohio. John Freeland had a small grocery store at the time. Later on he enlisted in the Federal army, during the war between the States from 1861 to 1865. He was a corporal. In 1868, John Freeland and John and William Spencer, each of whom had married a daughter of Andrew Miller, in Ohio, removed to Missouri and settled in Nodaway county near Graham. An acquaintance of theirs by the name of Kaufman had preceded them to this State. The two Spencers invested in lands. John Spencer bought some timber land. Freeland seemed to have had very little property of any kind outside of a set of carpenter tools and his gun. About a month after they had located their wives joined them. Mrs. Freeland, the plaintiff, sold her furniture and paid her traveling expenses out of the

proceeds. Kaufman had bought the eighty acres in suit in Holt county and they and John Spencer agreed upon an exchange of some timber owned by John Spencer in Nodaway for this prairie eighty in Holt. Upon this exchange, the plaintiff wrote to her father in Ohio, for assistance in procuring a home, and finally with a view to obtaining this particular eighty acres of land. John Spencer agreed to take $550 for the eighty, and wrote to Mr. Miller to that effect, and advised him that the land would be worth at least one-half more in another year. Accordingly Mr. Miller, plaintiff's father, sent $600 to John Spencer to pay for this eighty acres and thereupon Spencer directed the Kaufmans to make the deed directly to the plaintiff. Spencer testified that this was the father's direction and he, Spencer, thought the deed had been made to plaintiff until just before the beginning of this suit. He testified that he never knew or heard of Mr. Freeland, plaintiff's husband, claiming to be the owner of this land during his life. He testified that Mr. Freeland had no money with which to acquire the land. The deed was made and acknowledged in 1869. Mrs. Freeland afterwards received something like $1,000 from her father. Freeland lived with his family on the place and worked and assisted in improving it. Indeed, it is conceded by the defendants who are appellants here, that it was generally reputed in the family, and Mr. Freeland always admitted, that the $600 sent Spencer by Mr. Miller went into this land. Mrs. Freeland and three or four of her children, who were witnesses, testified that they never heard of the deed having been made to Mr. Freeland instead of to his wife. Whereas the three defendants who are contesting her right, insist that it was known by Mrs. Freeland and the other members of the family that the deed was to Mr. Freeland. There was a hopeless

conflict among the members of this family as to who claimed the farm. A number of the children testified that it was always known in the family and recognized by their father as their mother's farm. Whereas, the three defendants and possibly their husbands, testified that it was recognized as the husband's farm, at least after the acquisition of the town lots in Maitland. John Freeland died in 1903. Some twelve or fourteen years before he died they purchased a lot in Maitland, and the deed was made to John Freeland, but afterwards he conveyed the lot to the plaintiff, Mrs. Freeland, as she paid the purchase money therefor. The defendants insist that this conveyance of the Maitland property was made in order to refund to Mrs. Freeland, the plaintiff, the money invested in the farm by her father for her, but this was denied by Mrs. Freeland and her other children, and the weight of the evidence was against any such settlement between the plaintiff and her husband.

On the part of the defendants, it was shown that the plaintiff, as administratrix of her husband, made an inventory, in which the land in dispute was listed as belonging to her husband's estate, and in her settlements she was allowed credits for taxes and repairs made on the farm. On the other hand the evidence tended to show that while she claimed these credits she paid the same out of her rents and products from the farm, and that she signed the papers without understanding the effect of her charges and that at all times she thought the deed to this land was in her name. The circuit court decreed the land to the plaintiff, but rendered a decree in favor of Chase and his trustee as to the deed of trust given by one of the debtors, Mrs. Aretha Swan and her husband, upon her undivided interest in the land, the court holding that Chase was an innocent purchaser for value and without notice.

The errors relied upon for the reversal of the judgment of the circuit court will be considered in the order of the assignments of error.

I. It is insisted that the court erred in rendering a decree against all of the defendants for the reason that four of the defendants were not lawfully served with process in the case. The three defendants who are appellants in this cause do not challenge the service of process, as to themselves. They appeared and filed their answers and contested the case. The record recites that all the defendants were duly served with notice of summons as required by law. No objection was made to the service or to the return thereof at the trial, nor was the matter called to the attention of the court in the motion for new trial. The sufficiency of the summons as to the non-resident defendants and the return thereof is presented for the first time in this court. The record discloses that Aretha Swan, George Swan, J. E. Waller and Charles Chase, were each duly summoned on original writs of summons to Holt county, and that Ella Craytor and Joseph Craytor were duly summoned by writs issued to Nodaway county, and Edith Freeland, Rhoda Freeland and Grover Freeland were duly served on summons issued to Buchanan county. Frances Williamson and John Williamson her husband, Laura McMillen and A. V. McMillen her husband, Lucy Van Dyke and William Van Dyke her husband, were alleged to be non-residents of Missouri, and special service against them was prayed as provided by section 582, Revised Statutes 1899. The clerk issued a writ of summons as to these last named defendants, directed to the sheriff of Douglas county, Illinois, to which was attached a copy of the petition, and the sheriff returned that he served the same by delivering a true copy of said petition and summons to the said Laura McMillen, A. V. McMillen and Lucy

Van Dyke, William Van Dyke not being found in said county. The sheriff made affidavit of the said service before the clerk of the circuit court of Douglas county, Illinois, and the clerk affixed his certificate as to the official character of the sheriff, and his authority to serve writs in said county and State. Frances Williamson and her husband entered their personal appearance and filed their answer in the cause, and while Lucy Van Dyke did not file an answer in the cause, she was present and testified as a witness in behalf of the plaintiff, her mother. So that the contention on this point is that the service upon Mrs. McMillen and her husband and William Van Dyke was void and that the judgment is an entirety and therefore being void as to McMillen and wife and Van Dyke, it is void as to all of the defendants. We are of the opinion that this objection is not tenable.

In Dickerson v. Chrisman, 28 Mo. 1. c. 141, Judge Scott, speaking for this court, said: "The rule that a judgment is an entire thing and if reversed as to one must be reversed as to all, is one only applicable to judgments in courts of common law jurisdiction; or, in other words, to judgments at law. The answer of the defendant converted this proceeding, in effect, into a suit in the nature of proceedings in equity. The eighth section of the thirtieth article of the Act of 1849 prescribed the mode by which a party against whom a judgment by publication was obtained might be relieved. Dickerson has no right to appear in this court and seek a reversal of a judgment against Browning when he is not affected by it."

In State ex rel. v. Tate, 109 Mo. 1. c. 268, it was said: "The judgment was irregular, to say the least, as against J. J. Piland, the deceased. He was not served with process, and was reported 'not living' by the sheriff (though the effect of that part of the return we do not now discuss). But was the judgment on this account irregular as against the other defend-

ants, properly before the court? We think not. . . .
The only basis for contending that it did rests on the
supposed entirety of every judgment at law. There
are numerous remarks scattered through our reported
cases to the effect that such a judgment is an entirety
and must stand or fall compactly as to all parties
defendant to it; and some decisions rest squarely upon
that proposition. [Citing cases.] But there are also
many final rulings inconsistent with that theory, so
broadly stated."

In Christopher v. Kelly, 91 Mo. App. l. c. 100,
the court said: "Neither is the rule founded on the
entirety of judgments, whatever that doctrine may be
worth; and it is worth much less than it once was. The
original effect of it was, that if a judgment was void
as to one of the parties thereto, it was void as to all.
It was founded on a dictum and has been much dis-
credited and weakened. [1 Freeman on Judgments
(4 Ed.), sec. 136.] A study of the later cases of our
Supreme Court on the subject will show, in harmony
with what has been said above, that it is never applied
except under compulsion from the nature of the case.
It is common for judgments to be reversed as to one
of the parties, or set aside for irregularities or want
of jurisdiction, while it is upheld as to others. The
rule now established is, that a judgment against sev-
eral defendants, invalid as to one or more, may be
reversed as to them and affirmed as to the others.
This rule has been established in deference to the
principles of the code, which has adopted the procedure
in equity in this respect, and positively forbids the
reversal of a judgment unless error was committed
against the appellant or plaintiff in error and material-
ly affecting the merits of the action. [Sec. 865, R. S.
1899.]"

In the very late case of Stotler v. Railroad, 200
Mo. l. c. 149, this court said: "But, waiving the
point, we consider it established on reason and author-

ity that we may reverse as to one tortfeasor and affirm the judgment as to others.   [R. S. 1899, sec. 866.] The earlier doctrine was to look on a judgment as an entirety and to be reversed as to all, if reversed as to one.   But the later and better rule is to go deeper than the mere shell of the judgment and look into the nature of the case itself, and where the interests of parties to an appeal may be rightfully severed, where the errors do not affect the parties jointly and where the rights of one party are not dependent upon those of another, then, it is not necessary to reverse the entire judgment.   [Elliott on Appellate Procedure, sections 574, 575.]''

In view of these well-settled principles, it must be held that, as this is a suit in equity, the doctrine of the entirety of the judgment does not apply.   And as was said by Judge SCOTT in Dickerson v. Chrisman, 28 Mo. l. c. 141, these three defendants have no right to appear in this court and seek a reversal of the judgment against the McMillens and William Van Dyke when they are not affected by it.   And as said in State ex rel. v. Tate, supra, the irregularity as to the McMillens and Van Dyke cannot avail these defendants who were personally served and appeared and contested the case.   And it is not at all necessary for us on this appeal to determine whether the service and process as to the McMillens and Van Dyke was valid or not.

II.   It is insisted that the court erred in permitting the plaintiff, Mrs. Freeland, to testify in the cause, because her husband was dead.   In Scrutchfield v. Sauter, 119 Mo. l. c. 624, it was said by this court: ''It has long been the settled law in this State that the statute (sec. 8922) defining the competency of the husband and wife to testify in their own behalf, and for each other, did not intend to exclude the wife from

testifying in a case in which she was a real party in interest.''

Moreover she did not testify as to any contract with her husband. Her right to the land was not derived through any contract between her and her husband, but depended upon the payment of the money for the land in question by her father for her benefit, under an agreement between her father, Andrew Miller, and John Spencer, to which arrangement her husband was not a party. We think she was clearly a competent witness in her own behalf.

III. It is also alleged that the court erred in receiving the testimony of John Spencer and the plaintiff as to the contents of letters written by Andrew Miller, plaintiff's father, to them. An inspection of the record fails to disclose that any objection was made or exceptions saved to such evidence at the trial, and it is too late to raise it now for the first time in this court.

IV. As to the proposition that plaintiff is estopped to claim the land in suit by the understanding and agreement at the time of the acquiring of the Maitland property, we think there is no merit in the contention. This is not a question between the creditors of John Freeland and his heirs, but is a claim between Mrs. Freeland and the heirs of John Freeland. In order to constitute an equitable estoppel there must have been, not only a false representation or concealment of the facts, but they must have been made knowingly by the one to be estopped and believed and acted upon by the one claiming the estoppel. [Blodgett v. Perry, 97 Mo. l. c. 272; Scrutchfield v. Sauter, 119 Mo. l. c. 623.] We think the court was fully justified in finding that there was no such agreement as asserted by the defendants and that the property in Maitland was conveyed to plaintiff because she furnished the purchase money therefor.

V. The evidence in this cause fully established a resulting trust in favor of the plaintiff and against the heirs of John Freeland, the defendants.

The evidence not only shows that her father furnished the money to purchase this land for the plaintiff, but it shows that her husband and the children all knew this fact and the evidence shows that the title to the land was taken in the name of the husband without the knowledge or consent of the plaintiff and that she never discovered the mistake until just prior to the bringing of this suit. It is useless to cite authorities on a proposition so well settled as this. [Hudson v. Wright, 204 Mo. 412.]

VI. As to the defenses of the Statute of Limitations, the facts are that the plaintiff was under the disability of coverture at the time of the conveyance under which a resulting trust arose in her favor. She continued under this disability until the 20th day of January, 1903. This suit was instituted in August, 1905, within three years after the removal of said disability, and the evidence convinced the trial court that plaintiff had no knowledge of the fact that the legal title to the land in controversy was in the name of her husband until after his death. "In implied trusts the Statute of Limitations begins to run as soon as the facts are brought to the knowledge of the *cestui que trust*, so that he can take steps to enforce the trust. . . . The defendants relied on the statute, and it was hence their duty to bring the case within it by evidence; and having failed to do so, the presumption must be against them." [Sutton v. Casseleggi, 77 Mo. 397; Buren v. Buren, 79 Mo. l. c. 542; Mann v. Balfour, 187 Mo. l. c. 309.]

It only remains to say that in our opinion the fact that the plaintiff listed this land in the inventory of her husband's estate and took the credits for the taxes in view of all the testimony in the case, and

of her ignorance of the forms of law, ought not to have much weight against the clear and undisputed evidence showing the existence of a resulting trust in the land in her favor.

In our opinion the decree of the circuit court rests upon a solid foundation and it is therefore affirmed.

*Burgess* and *Fox, JJ.*, concur.