HARDY *v.* HARDY.

4-5434                                    132 S. W. 2d 365

Opinion delivered October 23, 1939.

1022

*James H. Nobles, Jr., Graham Moore, C. T. Sims* and *J. R. Wilson,* for appellant.

*Lamar Williamson, Adrian Williamson* and *Gaston Williamson,* for appellee.

SMITH, J. R. L. and B. A. Hardy were brothers and associates in a business which had prospered. In 1903 B. A. Hardy married Miss Gertrude Cotham, and to that union two children were born, a daughter named Louise, who married a Mr. Graham, and his son named Benjamin A. R. L. Hardy became involved in a feud with McVey brothers who assaulted and beat him. B. A. Hardy entered the feud and shot one of the McVeys, and was later killed by them in September, 1907. R. L. Hardy stated to B. A. on his death bed that he (B. A.) had lost his life in his brother's behalf, and that he would always look after Mrs. B. A. Hardy and her two infant children. The son was then six weeks old and the daughter was then three years old.

Thereafter the closest relations and the most unlimited confidence existed between R. L. Hardy and the widow and children of his deceased brother. R. L. Hardy

became the administrator of his brother's estate and guardian of the minor children after the death of his brother's widow. He also took charge of and managed the business affairs of Mrs. B. A. Hardy.

In December, 1893, R. L. Hardy married Miss Ida Harris, who inherited an estate worth, in round numbers, $60,000 upon the death of her father in 1894.

In addition to the control of the property of Mrs. B. A. Hardy and her minor children, R. L. Hardy also had control of and managed the estate of his wife, Mrs. Ida Hardy. He had a single bank account, kept in his own name, to the credit of which account he deposited all moneys coming into his hands, whether belonging to his wife or to Mrs. B. A. Hardy and her children. He kept books, however, showing receipts and disbursements of the funds of each of these parties.

R. L. Hardy kept an account of the assets of Mrs. B. A. Hardy coming into his hands from 1907, the date of the death of her husband, until January 19, 1929, the date of her own death, at which time the books of R. L. Hardy showed assets belonging to Mrs. B. A. Hardy amounting to $9,919.74. Upon the death of Mrs. B. A. Hardy, R. L. Hardy credited one-half of this amount to the account of the daughter and the other half to the credit of the son of B. A. Hardy.

In 1922 and in 1927 R. L. Hardy filed final accounts current of his guardianship of the son and daughter of B. A. Hardy respectively, and was discharged as their guardian. He received his discharge upon exhibition to the court of receipts from his wards showing payment of the sums due them respectively. No money was paid, but R. L. Hardy charged himself upon his ledger with the sums of money reported in his settlement as due his wards. He was thereafter indebted to them as their trustee, and not as their guardian.

During the guardianship Hardy had used the money of his wards in his business operations without obtaining any authority from the probate court to lend this money; but he charged himself with the interest thereon. He continued the practice of using this money after he

ceased to be guardian, but continued also to charge himself with the interest thereon. From time to time he advanced various sums of money to both B. A. and Louise.

It appears—and we find the fact to be—that Hardy kept accurate accounts, so far as the amounts thereof were concerned, both as guardian and as trustee, and it appears certain also that both B. A. and Louise reposed unlimited faith in their uncle's integrity. However, in 1933, Louise wrote her uncle, R. L. Hardy, a letter of inquiry about her property, and received from him a reply containing the following assurances:

"I have on hand lands that are good timber lands and more improved farms that I consider well worth at a low valuation $112,965 and about $100,000 in notes and accounts. The notes and accounts are worth about 50c on the dollar.

"I am paying you 6 per cent. on amount I am due you. Don't say anything to anyone about our business. This is the time to be on guard, but say nothing. I predict that in less than two years' time we will be on top of the world. Don't let anything discourage you and you will sure win."

Mrs. Ida Hardy, wife of R. L. Hardy, died testate in 1934, and was survived by her husband and an only child, a son named Eric. Under this will she devised all her property to her son, subject to a life estate in her lands which she devised to her husband. R. L. Hardy and Union Bank & Trust Company were named executors of the will, and their inventories showed assets totaling about $105,000, consisting largely of bonds of many kinds.

About this time B. A. and Louise discovered that R. L., their uncle, had executed a mortgage on a number of different tracts of land owned by him, to secure various creditors, but they were not included in that number. This appears to have been their first intimation that all was not well with their property held by R. L. Hardy, and they called upon him for a settlement. Some differences arising they employed an attorney to aid them

in this settlement, and an agreement was reached to the effect that R. L. Hardy was then indebted to B. A. in the sum of $28,535.56, and to Louise in the sum of $22,259.19.

An "agreement collateral to mortgage" which R. L. Hardy had executed for the benefit of other creditors, was then made under date of August 23, 1934, which recited the indebtedness of R. L. Hardy to B. A. and Louise and to the original mortgagees, in which it was agreed by the original mortgagees and all other parties in interest that the security of the mortgage inured to the benefit of all these creditors equally and ratably. This was the first settlement which Hardy had made as trustee. He did not question his indebtedness to B. A. and Louise, and with a few relatively unimportant exceptions his ledgers reflected the amount thereof. R. L. Hardy freely admitted this indebtedness, but stated that he had lost the money in his business and was unable to pay it except insofar as it was secured by the mortgage.

B. A. Hardy asked and was given permission to examine the books of R. L. Hardy. This examination disclosed that, while R. L. Hardy had lost the money belonging to his nephew and niece, the estate of his wife had steadily augmented and then totaled about $105,000.

R. L. Hardy appears to have exercised the same control over the estate of his wife as he had exercised over that of his nephew and niece, except that from time to time and at fixed intervals he rendered to his wife statements of her account with him. For some years after his marriage R. L. Hardy made real estate loans of his wife's money, and she executed a power of attorney to him, which recited that she had authorized him to "loan moneys for her, to receive payments therefor, receipt and release mortgages," and to satisfy them of record. Later his wife disapproved making of real estate loans, and at her direction Mr. Hardy began buying bonds of all kinds for her account, but using his own discretion as to the bonds to buy. When bought the bonds were placed in a safety vault in a local bank, of which Mr. Hardy and his son Eric carried the key. Later

the bonds were sent to a bank in New York, to be kept for Mrs. Hardy's account.

During the progress of the investigation of R. L. Hardy's books by B. A. Hardy, his nephew, ill-will developed, and B. A. Hardy became convinced that he had not been fairly dealt with, and that assets belonging to himself and to his sister had been converted into bonds which R. L. Hardy had purchased for the account of his wife.

R. L. Hardy was adjudged a bankrupt, and suit was brought to foreclose the mortgage to which reference has been herein made.

There had never been any transactions of any kind between B. A. Hardy and his sister with Mrs. R. L. Hardy, but on June 11, 1935, B. A. Hardy and his sister filed this suit against R. L. Hardy and Union Bank & Trust Company as executors of Mrs. Hardy's estate. This complaint alleged many of the facts herein recited, and the practice of R. L. Hardy to mingle all the funds which he controlled in a common account kept in his own name.

The complaint made the following allegations, among others:

"Plaintiffs state that out of the common fund carried by the defendant, R. L. Hardy, as guardian and agent of these plaintiffs, and as agent of Mrs. Ida Hardy, the defendant, R. L. Hardy, made purchases of real estate and of stocks and bonds in the name of Mrs. Ida Hardy, which is shown by an inventory of the assets of the estate of Mrs. Ida Hardy, deceased, and paid for same in part with the funds that belonged to these plaintiffs. That a list of the real estate and a list of the personal property comprising the assets of her estate are attached hereto as Exhibit 'B' and 'C,' and made a part of this complaint.

"Plaintiffs state that their funds, which were mixed and mingled by the defendant, R. L. Hardy, as their guardian and agent, and as the agent and attorney in fact for Mrs. Ida Hardy, his wife, were wrongfully converted

by the defendant, R. L. Hardy, and used by him for the purchase of real estate and the personal property as hereto attached and that a part of the real estate and part of the personal property of her estate is the product and fruits of their funds, and that they and each of them have a lien upon said real estate and personal property.

"That the defendant, R. L. Hardy, and the defendant, Union Bank & Trust Company, are the qualified and acting executors of the estate under the last will and testament of Mrs. Ida Hardy, deceased, and have in their possession and custody as such executors all of said property, both real and personal."

Upon these allegations, plaintiffs prayed: "That the defendants, R. L. Hardy, and the Union Bank & Trust Company, as executors, be enjoined from distributing the assets of the estate of Mrs. Ida Hardy, either to the defendant, R. L. Hardy, or the defendant, Eric Hardy, until so ordered by an appropriate order of this court. "That the defendant, R. L. Hardy, be required to make full, complete, and itemized statement showing the amount of money received and handled by him as agent of Mrs. Ida Hardy, and the amount of money received and handled by him as guardian and agent of these plaintiffs, how said moneys were invested or expended from 1907 to August 23, 1934, and that the plaintiffs have a lien upon the property of the estate of Mrs. Ida Hardy for the payment of such sum as this court on final hearing may find that their funds were invested in said property."

It will be observed, from the allegations of the complaint, copied above, that the suit to foreclose the mortgage had not then proceeded to a decree. The decree finally rendered gave judgment against R. L. Hardy in favor of B. A. and his sister in a sum the amount of which is not disputed.

No answer was filed by R. L. Hardy, who had but recently received his discharge in bankruptcy; but an answer was filed by the bank as executor, in which all the material allegations of the complaint were denied.

There was a plea also of the statute of limitations and of laches.

Upon the issues thus joined an enormous amount of testimony was taken. Each side employed an expert accountant to audit Hardy's ledgers, and each accountant made an elaborate report. The attempt on the part of the plaintiffs was to show that assets in R. L. Hardy's hands belonging to B. A. Hardy and to Mrs. Louise Hardy Graham were used by R. L. Hardy in buying bonds included in the executor's inventory.

Before plaintiffs began taking this testimony, they filed "petition for production of books and record," in which they alleged that it was essential that plaintiffs have access to all the books of R. L. Hardy, and that access to some of the books had been denied. Upon these allegations plaintiffs prayed "That upon his failure to do so (produce the books) they ask that this court take the allegations of this complaint as true and enter judgment against the executors in the sum of $15,000 for plaintiff, Benjamin A. Hardy, and for $15,000 for plaintiff, Louise Hardy Graham, and for all other relief consistent with the statutes in such cases made and provided."

This amended complaint and the prayer thereof may be disposed of by saying that relief was prayed to which plaintiffs were not entitled; but we do not think that the prayer thereof operated to change the nature and character of the suit.

On June 13, 1938, another amendment to the complaint was filed, in which it was prayed that Hardy be required to furnish an itemized statement of plaintiffs' assets, and that a finding be made as to assets inventoried as the property belonging to Mrs. Hardy's estate which had been purchased with funds belonging to plaintiffs. This amended complaint does not appear to have changed the nature of the original suit.

After the taking of the testimony had been completed and the case was ready for submission the executors, on June 13, 1938, filed a motion to dismiss the com-

plaint upon the ground "That the suit constituted an action to enforce a demand against the estate of Mrs. R. L. Hardy for debt, and is such an action as is required by the provisions of § 105 of Pope's Digest to be supported by an affidavit verifying said claim or demand in form and substance as required by § 101 of Pope's Digest."

A response to this motion was filed, denying that the suit constituted an action to enforce a demand against Mrs. Hardy's estate, or was such an action as is required by the provisions of § 105, Pope's Digest, to be supported by an affidavit verifying said claim in form and substance as required by § 101, Pope's Digest.

It is insisted also that the motion to dismiss was not filed in apt time.

It is conceded there was no verifying affidavit conforming to the provisions of §§ 105 and 101 of Pope's Digest. The insistence is that the character of the suit is such that this is not required.

The motion to dismiss was sustained, and this appeal is from that decree.

Numerous cases have held that compliance with these statutes is mandatory in the enforcement of demands against estates, and that a nonsuit will be ordered where the statute had not been complied with. *Purcelly* v. *Carter*, 45 Ark. 299; *Ross* v. *Hine*, 48 Ark. 304, 3 S. W. 190; *Wilkerson* v. *Eads*, 97 Ark. 296, 133 S. W. 1039; *Davenport* v. *Davenport*, 110 Ark. 222, 161 S. W. 189.

It was held in the case of *Hayden* v. *Hayden*, 105 Ark. 95, 150 S. W. 415, that in suits against estates, either by ordinary action or before the probate court, it is necessary to produce at the trial an affidavit of the justness of the claim and of its non-payment made before commencement of the action in substantial compliance with § 114, Kirby's Digest, now appearing as § 101, Pope's Digest, or the suit will be nonsuited.

It was held, however, in the case of *Carl-Lee* v. *Griffith*, 153 Ark. 74, 240 S. W. 15, that a complaint

against an executor which fails to allege the making of an affidavit of the justness of the demand is not fatally defective; the statute merely requiring the production of the affidavit at the trial.

The motion to dismiss was, therefore, made in apt time. It would not have been ground for dismissal that the complaint failed to allege the making of the affidavit, as it was sufficient to produce the affidavit at the trial, and the motion to dismiss was, therefore, aptly filed at the trial when it appeared that the statutory affidavit had not been made.

We are of the opinion, however, that this action is not a demand against the estate of Mrs. R. L. Hardy within the meaning of §§ 105 and 101, Pope's Digest. There had never been any transactions between B. A. Hardy and his sister with Mrs. R. L. Hardy. The suit was in the nature of a discovery, to ascertain what assets had been acquired for the benefit of Mrs. Hardy with money belonging to B. A. Hardy and his sister. They were not advised as to the amount thereof, and it was necessary that this fact be first ascertained. It was prayed that when this fact had been ascertained, a trust be impressed upon so much of the assets inventoried as the property of Mrs. R. L. Hardy which had been acquired with the funds of B. A. Hardy and his sister.

Under the title, "What Are Debts and Claims," § 210 of the chapter on Executors and Administrators in 11 R. C. L., page 191, declares the law to be that "a claim for a trust fund included in the assets of a decedent's estate, as to which the relation of debtor and creditor never existed between the parties, was not a 'debt' or 'demand,' within the meaning of the statutes relating to the order of payment of demands against such an estate."

Sections 105 and 101, Pope's Digest, relate to the enforcement of debts and demands which are to be classed and paid in accordance with the administration laws. The cause of action here sued on is not a debt or demand of that character. Had this been a suit

against the estate of R. L. Hardy after his death, either in the chancery court or in the probate court, we would have an entirely different case, one in which it might well be argued that this was an attempt to enforce a demand against an estate.

In the case of *Orr* v. *St. Louis Union Trust Co.*, 291 Mo. 383, 236 S. W. 642, it was held by the Supreme Court of Missouri (to quote a headnote in that case) that:

"8. A widow's claim against her deceased's husband's estate for money turned over to decedent for investment on her account is not barred by her failure to exhibit it in the probate court during the administration proceedings, as required by Rev. St. 1909, c. 2, art. 7; such claim involving the establishment of a trust and an accounting, which, being matters of an equitable nature, are not cognizable before the probate court."

The case of *Holloway* v. *Eagle,* 135 Ark. 206, 205 S. W. 113, supports the view that §§ 105 and 101, Pope's Digest, do not apply to this case. There W. H. Eagle & Son had acquired title to land, upon which the court found a trust should be declared for the benefit of the heirs of E. H. Holloway, deceased, and that demand was enforced against the estate of W. H. Eagle, although, as stated in that opinion, "No claim was filed against his (W. H. Eagle's) estate by the heirs of E. H. Holloway."

We are of the opinion also that this suit is not barred by limitations or by laches. R. L. Hardy was admittedly a trustee for both B. A. Hardy and his sister. Unlimited confidence was reposed in him as such until 1934, when the inventory of the estate of Mrs. R. L. Hardy was filed, and the cases appear to be unanimous to the effect that a cause of action for the enforcement of a constructive trust does not arise until the discovery of the fraud of the trustee where there was no laches in its discovery. Here, the parties acted promptly after the discovery of what they allege to be fraud of their trustee, and they have since prosecuted the action with the utmost diligence.

It was the view of the court below that §§ 105 and 101, Pope's Digest, had not been complied with, and that non-compliance therewith required the dismissal of the suit, and it was dismissed without any consideration or finding as to whether R. L. Hardy had purchased property for the benefit of his wife with the funds of his nephew and niece and, if so, to what extent. It is our opinion that this question should be passed upon by the court below as it is one which would require the consideration of innumerable records. Upon the remand of the cause the court may be advised that the assistance of a master is necessary, or it may be desired to take additional testimony; but, even so, we think this question of fact should be determined by the court below in the first instance, and the decree will be reversed and the cause remanded for that purpose.