ELIZABETH A. KNOX v. SADIE M. KNOX.[1]

November 29, 1946.

No. 34,291.

[1]Reported in 25 N. W. (2d) 225.

478

*George R. Kodadek* and *Marshall S. Snyder,* for appellant.
*Ernest A. Rich,* for respondent.

MATSON, JUSTICE.

Appeal from a judgment decreeing defendant to be a constructive trustee of realty for plaintiff's use and benefit. After entry of the judgment plaintiff died, and Elizabeth Knox as administratrix was substituted in his place and stead.

In 1931, the plaintiff, James M. Knox, while still living with and married to defendant, Sadie M. Knox, by assignment from Jesse Van Valkenburg, who was then his attorney, became the owner of a mortgage executed by Amy A. Hurd on lot 1, block 5, L. F. Menage's Addition to Minneapolis, except the front 11 feet thereof. These premises, improved with a six-apartment building, are otherwise known as 2431 Hennepin avenue, Minneapolis, Minnesota. Upon default in the mortgage, Mr. Knox subsequently instituted foreclosure proceedings through his said attorney. The sheriff's certificate of sale was issued in his name as purchaser. During this entire period, Horace Van Valkenburg, a son of Jesse, was practicing law in the office of his father as his father's employe. On or about September 4, 1936, shortly before the redemption period was about to expire, Horace Van Valkenburg, in the presence of his father and in the presence of both Mr. and Mrs. Knox, suggested that the certificate of sale be assigned to a third party

so that if moratorium proceedings were commenced and service made on Mr. Knox he would no longer be a party in interest, and thereby certain rents would be saved through the defeat of such moratorium proceedings. Pursuant to this suggestion and for the purposes thereof, the certificate of sale was duly assigned without consideration to Mrs. Knox. In the moratorium proceedings which followed, Horace Van Valkenburg appeared as attorney for Mrs. Knox, and in the stipulation of settlement it was provided that the rents due and payable should become her property. No redemption was made by the mortgagor, and the record title of said premises finally ripened in Mrs. Knox, the defendant herein. During the foregoing time, Mr. and Mrs. Knox were living together as husband and wife in another house owned by Mr. Knox in southeast Minneapolis. Later this house was sold, and they moved into the premises involved herein.

On March 9, 1944, they were divorced, and in the court's decree it was specifically provided that as long as Mrs. Knox received the income from said apartment building she should receive no alimony. Later the divorce decree was amended to show that it was not the intent of the court in said action to determine or adjudicate the title or ownership of said premises. In the divorce action, Horace Van Valkenburg appeared as attorney for Mr. Knox.

In the present action, which was commenced in October 1944 for the purpose of having Mrs. Knox declared to be a constructive trustee, the trial court found that it was the intention of the parties, when the sheriff's certificate of sale was assigned to Mrs. Knox, that Mr. Knox should remain the owner of said certificate and all rights thereunder and that Mrs. Knox should subsequently reassign to him said certificate or convey to him any interest in said premises acquired by her thereunder. Mr. Knox testified that on several occasions he had asked his wife to deed the property back to him and that she had promised to do so and had continued so to promise up until shortly before the institution of her divorce action, which was commenced on May 27, 1943. Mrs. Knox denied that the sheriff's certificate of sale was assigned to her for the purpose of avoid-

ing the moratorium and denied that she had ever promised to reconvey the property. When asked, however, how many times she had told Mr. Knox that she would reconvey the property to him when she got around to it, she said: "I don't know as I ever said it that way. I used to say, 'If you were the man you used to be.'" The trial court adjudged Mrs. Knox to be a constructive trustee holding the title to the property for the use and benefit of Mr. Knox, and further adjudged Mr. Knox to be the owner thereof in fee simple, subject, however, to the right of possession thereof accorded to Mrs. Knox by the decree in the divorce action.

■ Defendant contends that the trial court was in error, in that the evidence fails to supply the essentials necessary for a constructive trust. Apparently defendant has misconceived the nature and purpose of a constructive trust. It is an unjust-enrichment, rectifying remedy and has nothing in common with an express trust except a confusing similarity in surname or label. In order to arise, fraud, in its true sense, need not even be present. Certain courts and text writers have added to the confusion by using the word "fraud" in such an unjustifiably broad and ambiguous manner as to include all conduct which equity treats as unfair, unconscionable, and unjust. 3 Bogert, Trusts and Trustees, Part 1 (1946 ed.) § 471. It should be noted that it is not even necessary that a fiduciary relation should exist. 25 Minn. L. Rev. 667, 689. It is not the product of the intent of the parties. The nature of a constructive trust can best be comprehended by keeping clearly in mind that it is not, in its true sense, a trust at all, but purely a creation of equity designed to provide a remedy for the prevention of unjust enrichment where a person holding property is under a duty to convey it to another to whom it justly belongs. 23 Minn. L. Rev. 706, 708; 54 Am. Jur., Trusts, §§ 218, 219; 1 Perry, Trusts and Trustees (7 ed.) § 166. A court of equity, in decreeing a constructive trust, is bound by no unyielding formula, but is free to effect justice according to the equities peculiar to each transaction wherever a failure to perform a duty to convey would result in unjust enrichment. 3 Bogert, Trusts and Trustees, Part 1

(1946 ed.) § 471. In Restatement, Restitution, § 160, we find an accurate statement of the governing principles.

"Where a person holding title to property is subject to an equitable duty to convey it to another on the ground that he would be unjustly enriched if he were permitted to retain it, a constructive trust arises.

"*Comment:*

"*a. Constructive trust and express trust.* [Italics in text.] The term 'constructive trust' is not altogether a felicitous one. It might be thought to suggest the idea that it is a fiduciary relation similar to an express trust, whereas it is in fact something quite different from an express trust. An express trust and a constructive trust are not divisions of the same fundamental concept. They are not species of the same genus. They are distinct concepts. A constructive trust does not, like an express trust, arise because of a manifestation of an intention to create it, but *it is imposed as a remedy to prevent unjust enrichment.* A constructive trust, unlike an express trust, is not a fiduciary relation, although the circumstances which give rise to a constructive trust *may or may not involve a fiduciary relation.*" (Italics supplied.)

In Henderson v. Murray, 108 Minn. 76, 79, 121 N. W. 214, 216, 133 A. S. R. 412, this court substantially adopted the same rule.

"* * * where a party obtains the legal title to land by fraud or bad faith, or by taking advantage of confidential or fiduciary relations, *or in any other unconscientious manner, so that he cannot justly retain the property,* equity will impress a constructive trust upon it in favor of the party who is equitably entitled to it." (Italics supplied.)[3]

■ In the instant case, the property was conveyed by the husband to his wife with the understanding, according to the findings of the trial court, that the actual ownership should nevertheless remain with the grantor and be subject to a reconveyance. We

[3]See, also, Whitten v. Wright, 206 Minn. 423, 289 N. W. 509; Citizens State Bank v. Wade, 165 Minn. 396, 206 N. W. 728.

have already held that the relationship between a husband and wife is confidential in its nature (Martin v. Tucker, 217 Minn. 104, 106, 14 N. W. [2d] 105, 106) and fiduciary in its character (Crowley v. Crowley, 219 Minn. 341, 18 N. W. [2d] 40).[4] See, State ex rel. Minnesota L. & T. Co. v. Probate Court, 129 Minn. 442, 152 N. W. 845, L. R. A. 1915E, 815. Although the conveyance was not procured by defendant through the exercise of any fraud, nevertheless it was obviously made in reliance upon the confidential marital relation. When defendant, shortly before the commencement of the divorce action, finally refused to reconvey the property, she betrayed the confidence reposed in her as a wife. She was under a duty to reconvey, and this duty she refused to perform. Clearly, it would have been inequitable to permit her to become unjustly enriched through a retention of the property.[5]

---

[4]Although the relation between husband and wife, strictly speaking, is not fiduciary by virtue of the relation alone; nevertheless it is so highly confidential and justifiably subject to such great reliance that taking advantage of it produces in effect the same consequences as though it were truly fiduciary. 25 Minn. L. Rev. 688-689.

[5]Defendant cites Tatge v. Tatge, 34 Minn. 272, 25 N. W. 596, 26 N. W. 121, wherein defendants, the parents of plaintiff, in 1881 conveyed to plaintiff certain premises partly by way of advancement to their son and partly in consideration of an agreement by him for their support and maintenance. A year later plaintiff, finding himself in trouble with a girl with whom he had been intimate, fearing that she might sue him, and desiring to place the property beyond the reach of any judgment she might obtain, conveyed the premises to his mother with the understanding that she would reconvey the same when the trouble with the girl was settled. Subsequently, in 1883, the difficulty with the girl having been settled, plaintiff sought a reconveyance, but the parents refused to do so. Upon appeal, this court held that no fraud appeared and that no constructive trust for the use and benefit of plaintiff could be decreed. The son was of full age and had been emancipated. (See, Gregory v. Bowlsby, 115 Iowa 327, 88 N. W. 822.) It was not urged upon the court that any confidential relation existed or that any unjust enrichment would result from the parent's refusal to reconvey. The original conveyance was made in part as a gratuitous advancement and in part in consideration of a promise of support. The parents in refusing to reconvey merely retained that which had previously been theirs and for which they apparently had received nothing. In the absence of a showing

Defendant asserts that a constructive trust may not be decreed, by virtue of the abolition of certain trusts under the provisions of Minn. St. 1945, §§ 501.01 and 501.07. If we bear in mind the true nature of a constructive trust, it is obvious that these statutory sections have no application herein. See, Sieger v. Sieger, 162 Minn. 322, 324, 202 N. W. 742, 743, 42 A. L. R. 1; 23 Minn. L. Rev. 706, 708; 25 Minn. L. Rev. 716-717; Minn. St. 1945, § 501.09.[6] It is likewise obvious that Minn. St. 1945, § 501.08,[7] has no application, in that no creditors are here involved.

We decline to consider assignment of error No. VII insofar as the same pertains to the alleged misconduct of Mr. Knox in making the conveyance to defendant for the purpose of defeating the moratorium statute by changing the party in interest, in the hope that the mortgagor's attorney would negligently fail to make a proper search of the record to determine any new party in interest.

"* * * An assignment of error based on mere assertion and not supported by any argument or authorities in appellant's brief is waived and will not be considered on appeal unless prejudicial error is obvious on mere inspection." Kaehler v. Kaehler, 219 Minn. 536, 18 N. W. (2d) 312; Ranum v. Swenson, 220 Minn. 170, 178, 19 N. W. (2d) 327, 331.

Defendant alleges further error in permitting Horace Van Valkenburg to testify to the conversation which took place in his father's law office, in the presence of Mr. and Mrs. Knox, when it was first suggested that the sheriff's certificate of sale be assigned to a third party, and further to testify to certain facts pertaining to the assignment thereof to Mrs. Knox. It is to be noted that the entire testimony of Horace was confined to matters which came to his knowledge when he and his father were attorneys for Mr. Knox and not attorney for Mrs. Knox, the defendant. Communications

of unjust enrichment, none is to be presumed. In any event, the later decisions of this court are controlling.

[6]See, M. S. A. § 501.09, and cf. Mason St. 1927, § 8088.

[7]See, M. S. A. § 501.08, and cf. Mason St. 1927, § 8087.

between an attorney and his client which are protected as privileged under Minn. St. 1945, § 595.02(2),[8] are limited to those made in the course of the professional employment and with respect to the subject matter thereof. The only person who could assert the privilege as to the testimony pertaining to the assignment of the sheriff's certificate of sale and the purpose thereof was the client himself, Mr. Knox. Although the Van Valkenburgs later represented the defendant in moratorium proceedings, such subsequent employment did not retroactively impart a privileged status to these prior communications. Communications made between persons who afterward become opposing parties in litigation, made in the presence of the attorney of one of them, as well as communications made (or advice given) by such attorney to his client in the presence of the opposing party, are not subject to a claim of privilege by such opposing party. 22 Minn. L. Rev. 110, and cases there cited; 8 Wigmore, Evidence (3 ed.) § 2312; 5 Jones, Evidence (2 ed.) § 2166.[9]

■ Assignments of error alleging that the trial court failed to do complete equity in not making provision to compensate defendant for her contributions toward the purchase and maintenance of the property are without merit. Defendant's claim in part is based on the contention that when the former homestead in southeast Minneapolis was sold and the proceeds therefrom were applied to the purchase of the property involved herein she had a right to a half share in such proceeds and that she is now entitled to equitable reimbursement for such share. The so-called southeast homestead was not owned by the parties in either joint tenancy or as tenants in common, but was the sole property of the husband, subject to the inchoate and contingent interest of defendant as his wife. Obviously, the sale did not by any process of legal alchemy

[8]See, M. S. A. § 595.02(2), and cf. Mason St. 1927, § 9814(2).

[9]As to limitations upon the privilege where the same attorney acts for two parties who have a common interest but who later become opposed to each other in litigation, see 8 Wigmore, Evidence (3 ed.) § 2312; Am. L. Inst., Model Code of Evidence, Rule 211; 5 Jones, Evidence (2 ed.) § 2176, and 28 R. C. L., Witnesses, §§ 155, 156.

transmute defendant's inchoate interest into a vested property right with respect to the proceeds. The investment by the husband of the proceeds in the present premises gave defendant no different or greater property interest than she had before in the property of her husband. Her interest was still inchoate and contingent. This inchoate interest was fully and adequately recognized by the trial court when it determined, in establishing a constructive trust, that Mr. Knox was the owner of the premises in fee simple, *subject to defendant's right of possession thereof in accordance with the divorce decree.* No other conclusion is consistent with the nature of the statutory interest which one spouse possesses in the property of the other. See, 3 Dunnell, Dig. & Supp. § 4279. Aside from her claim to part of the proceeds from the sale of the southeast property, defendant alleges error in that she was awarded nothing as compensation for certain services. Without deciding whether the issue was properly litigated and placed in issue before the trial court, we observe that the record contains nothing as to the extent or reasonable value of such services. Obviously, any award to defendant would have necessarily been based on mere conjecture. Moneys expended by the defendant in connection with the property involved substantially nothing more than an application of rental income from the premises.

■ It is urged that plaintiff was guilty of laches and that the statute of limitations had run against his action. We find no laches. A suit in equity for restitution is barred by the lapse of time only if it would be unjust to allow the complainant to maintain it. The existence of such injustice depends on (a) whether the complainant has been unreasonable in his delay after learning the facts, or (b) whether the delay has made it unfair to permit the suit either because of hardship to the defendant or to third persons by reason of a change in circumstances, or (c) whether the lapse of time has made it difficult to ascertain the facts so that a substantial chance of arriving at an erroneous decision exists. See, Restatement, Restitution, § 148, *comment a.*

"Some of the specific reasons for delay which may constitute an excuse are: the fact that the respondent stood in a fiduciary or confidential relationship to the complainant who, because of that, hesitated to begin proceedings; * * * the fact that the conduct of the respondent delayed proceedings, as * * * where he sought to prevent action or caused delay by promises of satisfaction; * * *." Restatement, Restitution, § 148, *comment b.*

In the instant case, we have not only the confidential relation between the parties, but also the element of delay caused by defendant's failure to keep the promises of satisfaction made to plaintiff from time to time. In additional recognition of plaintiff's rights and in further rebuttal of laches, we have the long-time joint possession of the property by both parties, coupled with the payment of taxes thereon by plaintiff. 4 Dunnell, Dig. & Supp. § 5351; 4 Bogert, Trusts and Trustees, § 949; see, Baker v. Kelley, 11 Minn. 358 (480). No unfairness to defendant or third parties has resulted from the suit, and the lapse of time has not affected the availability of the evidence pertinent to the cause.

■ Plaintiff's cause of action is not barred by the statute of limitations. With respect to constructive trusts, we have already held that:

"* * * the statute of limitations runs from the time the act was done by which the party became chargeable as trustee by implication; that is, from the time when the cestui que trust could have enforced his right of suit." Stillwater & St. Paul R. Co. v. City of Stillwater, 66 Minn. 176, 178, 68 N. W. 836, 837.

See, Jones v. Hammond, 168 Minn. 131, 209 N. W. 864; In re Estate of Burton, 206 Minn. 516, 289 N. W. 66; 4 Dunnell, Dig. & Supp. § 5653. By what act does the party become chargeable as a constructive trustee? When does the cestui que trust's right of action accrue? There can be no constructive trust until we have as its basis an adverse and inequitable withholding of property. Text writers in speaking of the repudiation of a constructive trust have confused the issue. It is sheer nonsense to say that no repudiation

of a constructive trust is necessary in order to start the running of the statute of limitations. Until a constructive trust arises by virtue of an adverse and inequitable withholding, we have no constructive trust to repudiate (4 Bogert, Trusts and Trustees, § 952), and, once in existence, it is not subject to repudiation. Repudiation as a means of starting the running of the statute is known only to trusts which are created by the express or implied intent of the parties. What was repudiated here was the right of Mr. Knox to a reconveyance of his property, and this repudiation brought about the adverse and inequitable withholding of and with which the constructive trust was contemporaneously born. Shearer v. Barnes, 118 Minn. 179, 188, 136 N. W. 861, 864; 3 Bogert, Trusts and Trustees, Part 1 (1946 ed.) § 472. The constructive trust, however, has no existence in fact as a trust, but is only a fiction adopted by equity as an unjust-enrichment, rectifying remedy. It is analogous to other equitable remedies.

"* * * Where the aid of a court of equity is sought to establish a trust * * * by legal construction, the same diligence is required as in other equitable suits." Randall v. Constans, 33 Minn. 329, 338, 23 N. W. 530, 534; 4 Dunnell, Dig. & Supp. § 5653.

Obviously, no greater diligence is required. When the trust is imposed it relates back *as a remedy* to the time when the property was first conveyed, subject to an oral promise of reconveyance. Only by mistaking the trust fiction, adopted by equity as a purely remedial device, for the realities characteristic of an express trust can we come to a conclusion that the act which creates the trust automatically and necessarily relates back to the original deed of conveyance. Obviously, the act of the adverse and inequitable withholding, which brings the constructive trust into being, is not a fiction, but a reality, which in point of time is not to be related either backward or forward. It is the act by which a defendant becomes chargeable as a constructive trustee, and it is only from the actual time of this act when the cestui que trust could have enforced his right of suit. Stillwater & St. Paul R. Co. v. City of

Stillwater, 66 Minn. 176, 68 N. W. 836; 34 Am. Jur., Limitation of Actions, § 179.

As with other equitable remedies, the plaintiff must act with diligence, but this diligence requires no more than that he shall act with reasonable promptness when he has acquired either actual or imputed knowledge of a wrongful withholding. Knowledge will be imputed to the plaintiff when, by the exercise of reasonable care, he should have known of the circumstances revealing defendant's adverse and inequitable role.

"* * * the prevailing view is that the statute of limitations and similar rules affect the right to obtain a decree establishing a constructive trust, from the date when the wrongful and adverse holding begins and is, or should be, known to the plaintiff." 3 Bogert, Trusts and Trustees, Part 1 (1946 ed.) § 472, p. 12.

We adopt the prevailing view, and any decisions of this court to the contrary are expressly overruled.[10]

In the instant case, there was nothing to put Mr. Knox on notice that his wife held the property adversely until 1943, when she expressly repudiated her oral promise to reconvey. Prior to such express repudiation, the parties lived in joint possession of the premises as husband and wife, and Mr. Knox had just reason to believe that defendant's holding of the title was friendly and not adverse to his interest in the property. The retention of unchallenged possession by defendant is a significant factor in itself in tolling the statute of limitations.[11]

[10]See, 4 Bogert, Trusts and Trustees, § 953, and cases under note 66; 3 Bogert, Trusts and Trustees, Part 1 (1946 ed.) § 472; Freeland v. Williamson, 220 Mo. 217, 119 S. W. 560; Bainbridge v. Stoner, 16 Cal. (2d) 423, 106 P. (2d) 423; Hardy v. Hardy, 198 Ark. 1021, 132 S. W. (2d) 365; Wilkerson v. Seib, 20 Cal. (2d) 556, 127 P. (2d) 904; Bend v. Marsh, 145 Neb. 780, 18 N. W. (2d) 106; Staab v. Staab, 158 Kan. 69, 145 P. (2d) 447; Crosby v. Rogers, 197 Ga. 616, 30 S. E. (2d) 248.

[11]Cook v. Elmore, 25 Wyo. 393, 402, 171 P. 261, 263; see, Baker v. Kelley, 11 Minn. 358 (480); Burk v. Western Land Assn. 40 Minn. 506, 42 N. W. 479; Lakin v. Sierra Buttes G. M. Co. (C. C.) 25 F. 337; Norton v. McDevit, 122 N. C. 755, 30 S. E. 24; Barroilhet v. Anspacher, 68 Cal. 116,

490

The judgment of the trial court is affirmed.

Affirmed.

8 P. 804; Flanner v. Butler, 131 N. C. 155, 42 S. E. 547; Lufkin v. Jakeman, 188 Mass. 528, 74 N. E. 933; Boyd v. Boyd, 163 Ill. 611, 45 N. E. 118; 4 Bogert, Trusts and Trustees, § 953, p. 2770.

[1]Reported in 25 N. W. (2d) 219.