**In re the ESTATE OF Thomas N. VITTORIO, Sr., Decedent.**

No. C4–95–2306.

Court of Appeals of Minnesota.

April 23, 1996.

Jennifer L. Carey, Richard R. Burns, Duluth, for Appellant Thomas Vittorio, Jr.

Michael S. Gerlach, Duluth, for Respondent Ruth Vittorio.

Considered and decided by HARTEN, P.J., and HUSPENI, and PETERSON, JJ.

## OPINION

HUSPENI, Judge.

In this probate proceeding, Thomas Vittorio, Jr. argues that his appeal is properly taken from the correct order and that the district court erred in (1) imposing a constructive trust on real property he held in joint tenancy with the testator, and (2) ordering this property transferred to the estate to be distributed through probate. We reverse and remand for an evidentiary hearing.

## FACTS

In 1994, when Thomas Vittorio, Sr. (the testator) learned he was dying, he executed a will, paragraph 6.3 of which provided:

*Intentional Omission.* * * * Certain of my property has been transferred outside the scope of this will and it is understood and agreed that Thomas Vittorio shall distribute such property as I have instructed him. It is my intent that Thomas Vittorio shall receive the property in which we currently live. It is further my instruction that the remaining property shall be sold and the proceeds distributed equally among all my children.

The testator had one son, appellant Thomas Vittorio, Jr., and four daughters, one of whom is respondent Ruth Vittorio.

The same day the testator executed his will, he transferred his homestead (homestead) and the two other pieces of real property (1994 properties) he owned in fee simple to himself and appellant as joint tenants.

The testator transferred no other real property to appellant in the six months before the will was executed. In 1986, however, the testator and appellant had purchased a fourth piece of real property in joint tenancy (1986 property).

Two months after executing his will, the testator died. Respondent moved to construe paragraph 6.3 in the will to determine who was to receive the 1994 properties and the 1986 property. Respondent did not dispute the bequest of the homestead to appellant or any other provision in the will.

The parties argued that it was possible to construe the will without resorting to extrinsic evidence, but they also submitted numerous affidavits for the court to consider if it determined extrinsic evidence was necessary. Respondent's affidavits suggested that the testator had transferred the 1994 properties to appellant with the understanding that appellant would comply with the testator's instructions to sell the properties and distribute the proceeds equally among the testator's five children. Respondent's affidavits also suggested the testator might have left the homestead to appellant with the understanding that, in exchange for this bequest, appellant would sell the 1986 property and divide the proceeds with his sisters. Appellant's affidavits suggested that the testator had transferred the 1994 properties to him with the understanding that he would keep one property and sell the other but would keep all the properties if his sisters fought him or were too demanding about the estate.

On July 17, 1995, the district court held that paragraph 6.3 in the will was clear and unambiguous. The court stated that the testator placed all of his real property into joint tenancy with appellant, and that paragraph 6.3 provided that appellant shall distribute each of these real estate assets as instructed in paragraph 6.3. According to that paragraph, appellant would receive the homestead and each of the remaining joint tenancy properties would be sold and the proceeds distributed equally among all the children. The court indicated that this result

could be accomplished in one of three ways: By the Court finding that the trans-

ferring to joint tenancy with the personal representative by the testator of these properties was for convenience only and that these assets must be included as part of the testator's probate estate and disposed of through a probate under court supervision; or that the Court find that a testamentary trust has been created and the matter be disposed of through a supervised trust proceeding; or that counsel and the personal representative go forward and accomplish the objects of the testator without direct court supervision, but to the satisfaction of the interested parties. Counsel should discuss between themselves how best to settle and close these matters at least expense and time to the interested parties * * *.

Appellant filed a motion for reconsideration which the district court denied on September 1, 1995. On September 28, 1995, after the parties told the court that they could not settle the matter, the court filed an order finding that a constructive trust had arisen with regard to the 1994 and 1986 properties. The court found that

[t]he distributive terms of the constructive trust are the same as the dispositive terms of the Will. Therefore, there is no need for a separate trust proceeding, with the duplicate expenses involved, and the assets of the trust should be distributed through the probate estate * * *.

## ISSUES

1. Does this court have jurisdiction to hear this appeal?

2. Did the district court err in construing the will?

## ANALYSIS

### I.

■ Respondent argues that appellant has sought review of a nonappealable order and that this court therefore has no jurisdiction to consider this appeal. We disagree. An appeal may be taken to this court

from a final order, decision or judgment affecting a substantial right made in an administrative or other special proceeding * * *.

Minn.R.Civ.App.P. 103.03(g). An order imposing a constructive trust is made in a special proceeding and therefore appealable under Minn.R.Civ.App.P. 103.03(g). *Rock v. Hennepin Broadcasting Assocs., Inc.,* 359 N.W.2d 735, 738 (Minn.App.1984). Here, because the September 28, 1995, order imposed a constructive trust, it is appealable under Minn.R.Civ.App.P. 103.03(g).

■ The September 28, 1995, order also is appealable as either a probate order authorizing the sale of real estate or a probate order determining distribution. *See* Minn. Stat. § 525.71(3) (1994) (appeal may be taken from probate order authorizing sale of real estate); Minn.Stat. § 525.71(12) (1994) (appeal may be taken from probate order determining distribution). Although only the July 17, 1995, order specifically stated that the real estate must be sold and the proceeds distributed among the children, this order gave the parties three alternatives for accomplishing this result. In the September 28, 1995, order, the court specified how the property would be sold and how the proceeds would be distributed. Thus, the September 28, 1995, order was the order that actually authorized the sale of real estate and determined distribution.

### II.

■ In construing a will, the court's purpose

is to ascertain the actual intention of the testator as it appears from a full and complete consideration of the entire will when read in light of the surrounding circumstances at the time of the execution of the will.

*In re Trusts Created by Will of Hartman,* 347 N.W.2d 480, 482–83 (Minn.1984).

■ Joint tenancy property does not pass through a will and is not subject to probate. *See generally* William McGovern, Jr. et al., *Wills, Trusts, and Estates* § 9.2 (1988). Instead, the "surviving joint tenant succeeds to the person with whom he shared the joint tenancy." *Hendrickson v. Minneapolis Fed. Sav. & Loan Ass'n,* 281 Minn. 462, 464, 161 N.W.2d 688, 690 (1968).

A constructive trust arises, however,

> [w]here a person holding title to property is subject to an .equitable duty to convey it to another on the ground that he would be unjustly enriched if he were permitted to retain it * * *.

*Knox v. Knox,* 222 Minn. 477, 482, 25 N.W.2d 225, 228 (1946) (quoting *Restatement Restitution,* § 160 (1937)). Further,

> where a party obtains the legal title to land by fraud or bad faith, or by taking advantage of confidential or fiduciary relations, *or in any other unconscientious manner, so that he cannot justly retain the property,* equity will impress a constructive trust upon it in favor of the party who is equitably entitled to it.

*Knox,* 222 Minn. at 482, 25 N.W.2d at 229 (quoting *Henderson v. Murray,* 108 Minn. 76, 79, 121 N.W. 214, 216 (1909)).

The establishment of a constructive trust does not set aside the title to the property but instead

> proceeds on the theory that, even though legal title rests in the grantee of the deed, equity will declare that such title is held in trust for someone else to whom it rightfully belongs.

*Borsgard v. Elverum,* 248 Minn. 405, 412, 80 N.W.2d 604, 609 (1957).

Because a constructive trust does not set aside title to property, parol evidence is admissible to show establishment of a constructive trust. *Id.* at 412, 80 N.W.2d at 609. A constructive trust also is exempt from the statute of frauds because it arises by operation of law. *Dietz v. Dietz,* 244 Minn. 330, 334, 70 N.W.2d 281, 285 (1955).

In decreeing a constructive trust, the court

> is bound by no unyielding formula, but is free to effect justice, according to the equities peculiar to each transaction * * *.

*Knox,* 222 Minn. at 481, 25 N.W.2d at 228. The court, however, must

be persuaded by clear and convincing evidence that the imposition of a constructive trust is justified to prevent unjust enrichment.

*In re Estate of Eriksen,* 337 N.W.2d 671, 674 (Minn.1983).

In some cases where real property was transferred in causa mortis,[1] courts have not been persuaded that a constructive trust arose over the property. *See, e.g., Byer v. Byer,* 159 Minn. 149, 151–52, 198 N.W. 412, 413 (1924) (court properly refused to impose constructive trust when evidence showed farm was transferred to decedent's father outright and unconditionally rather than with instructions that property be sold and proceeds divided among decedent's siblings).

Under other facts, however, courts have imposed a constructive trust on real property held in joint tenancy. *See, e.g., Borsgard,* 248 Minn. at 413–14, 80 N.W.2d at 609–610 (constructive trust for benefit of deceased joint tenant's legatees imposed on surviving joint tenant's interest in joint tenancy real property when surviving joint tenant had led deceased joint tenant to believe he would use joint tenancy property to pay bequests in her will); *Dietz,* 244 Minn. at 336–37, 70 N.W.2d at 285–86 (constructive trust for benefit of mother imposed on real property held in joint tenancy with son when son breached agreement to support mother for her lifetime in exchange for her placing property into joint tenancy). In these cases, the constructive trust arose although the real property had been held in joint tenancy for several years. *See Borsgard,* 248 Minn. at 406–08, 80 N.W.2d at 606–07 (nine years); *Dietz,* 244 Minn. at 331, 70 N.W.2d at 283 (nearly six years).

The facts in *Borsgard,* in particular, are very similar to those in the present case. In *Borsgard* the wife was admitted to the hospital where, in the presence of her husband, she executed her will and, at the same time, told her attorney that the bequests were to be paid out of the proceeds from her farm. 248 Minn. at 407, 80 N.W.2d at 606. Seven years earlier, however, the wife had trans-

---

1. The term is defined as "[i]n contemplation of approaching death." *Black's Law Dictionary* 200 (5th ed. 1979).

ferred title to the farm from herself in fee simple to herself and her husband in joint tenancy but had not recorded the deed. *Borsgard,* 248 Minn. at 406, 80 N.W.2d at 606. The day after the will was executed, the husband recorded the deed. *Id.* at 408, 80 N.W.2d at 607. When the wife died two weeks later, her husband told the attorney that probate was unnecessary because the farm had been transferred into joint tenancy to save the expense of probate and the husband would take care of the wife's bequests. *Id.*

After the husband died nearly two years later without paying the wife's bequests, the district court imposed a constructive trust on the farm for the benefit of the wife's legatees. *Id.* at 409, 410–11, 80 N.W.2d at 607, 608. The supreme court found the evidence sustained the findings that the parties understood the wife's bequests were to be paid out of the farm proceeds; that the husband had agreed to this provision; and that, most importantly, the husband had acted in such a manner as to make his wife believe that he would carry out the provisions of her will. *Id.* at 413–14, 80 N.W.2d at 610. The supreme court stated that if the husband had not so acted, the wife could have taken other steps to ensure that her bequests were paid out of her interest in the farm. *Id.* at 414, 80 N.W.2d at 610. The supreme court held that these facts clearly established the legatees' right to the equitable relief of a constructive trust. *Id.*

In the present case, the district court commendably acted to preserve the assets of this modest estate. But the district court's decision was made on the basis of written affidavits that did not include all the facts necessary to resolve the issues in this case and were not subject to cross-examination. We therefore agree with the parties that the record here is inadequate for review and that the interests of justice require the case to be remanded for an evidentiary hearing. Accordingly, we reverse the district court's July 17, 1995, September 1, 1995, and September 28, 1995, orders and remand for an evidentiary hearing. *See Local Oil Co. v. City of Anoka,* 303 Minn. 537, 539, 225 N.W.2d 849, 851 (1975) (when record was inadequate for

review, interests of justice best served by remanding case for reconsideration upon facts in record and such additional evidence as parties may produce).

On remand, the district court shall consider, but is not limited to, the following issues: (1) whether the words "certain of my property has been transferred outside of the scope of this will" in paragraph 6.3 refer to any properties other than the real properties at issue in this case; (2) whether the 1994 properties were transferred before or after the will was signed and whether the timing of this transfer affects the interpretation of the will; (3) whether the will created an express trust as to any real property; (4) whether the testator instructed appellant as to the distribution of the property transferred to him outside the will and, if so, what were those instructions; (5) whether appellant led the testator to believe that he would comply with the testator's instructions regarding the distribution of the property transferred to him outside of the will; (6) whether the circumstances surrounding the transfer of the 1994 properties into joint tenancy with appellant show a constructive trust arose as to these properties; (7) whether appellant led the testator to believe that he would follow the testator's instructions regarding the disposition of the 1986 property in exchange for the homestead bequest; (8) whether the circumstances surrounding the execution of the will show a constructive trust arose as to the 1986 property; (9) if a constructive trust arose as to any property, who were the trust's beneficiaries and how should the trust be carried out; and (10) any other issue that the district court requires the parties to address to aid resolution of the issues in this case.

■■■■ Finally, appellant argues that the testator's instruction that he keep all the real property if his siblings fought him or were too demanding is not an invalid will contest penalty clause. Because this issue will arise on remand, we address it here in the interest of judicial economy. *See Midway Nat'l Bank v. Estate of Bollmeier,* 504 N.W.2d 59, 64 (Minn.App.1993) (court may address issue to serve interest of judicial economy).

Minn.Stat. § 524.3–905 (1992), in effect at the times relevant here, provides:

> A provision in a will purporting to penalize any interested person for contesting the will or instituting other proceedings relating to the estate is unenforceable if probable cause exists for instituting proceedings.

See 1994 Minn. Laws ch. 472, § 64 (repealing Minn.Stat. § 524.3–905); 1994 Minn. Laws ch. 472, § 65 (providing repeal of Minn.Stat. § 524.3–905 was effective January 1, 1996); Minn.Stat. § 524.2–517 (1994) (provision similar to Minn.Stat. § 524.2–905 that took effect January 1, 1996).

Although the penalty instruction present in this case is not expressly stated in the will, appellant argues that it is one of the testator's instructions to him, which are referred to in the will. Thus, the penalty instruction, by implication, is included in the will. Further, although the instruction at issue here penalized appellant's sisters for less formal action than that described in the statute, we conclude that the instruction does constitute a forfeiture clause. We agree with respondent that form should not be elevated over substance and conclude that testator's instruction that appellant keep all the real property for himself if his sisters fought him or were too demanding is unenforceable under Minn.Stat. § 524.3–905 (1992).

## DECISION

The September 28, 1995, order imposed a constructive trust and therefore was appealable under Minn.R.Civ.App.P. 103.03(g). The September 28, 1995, order also was appealable under Minn.Stat. § 525.71(3) as an order authorizing the sale of property and under Minn.Stat. § 525.71(12) as an order determining distribution. Finally, the record here is inadequate for review and the interests of justice require that the case be remanded for an evidentiary hearing. We therefore reverse the July 17, 1995, the September 1, 1995, and the September 28, 1995, orders and remand for an evidentiary hearing and any other proceedings not inconsistent with this opinion.

**Reversed and remanded.**

HARTEN, J., concurs specially.

HARTEN, Judge, concurring specially.

I agree with the court that an evidentiary hearing is necessary to reveal and establish facts supporting the parties' competing claims. I write separately, however, to highlight my view of the status of the Fifth Street property, which even now is clear.

Decedent and his son purchased the Fifth Street property in joint tenancy *from a third party* in 1986. Until decedent's death in January 1995, that property at all times remained a non-probate, joint tenancy asset. In my opinion, decedent's will cannot reach the Fifth Street property. Paragraph 6.3 of decedent's will purports to control final disposition of certain property:

> Certain of my property has been transferred outside the scope of this will and it is understood and agreed that Thomas Vittorio [decedent's son] shall distribute such property as I instructed him.

Decedent did not transfer the Fifth Street parcel into joint tenancy with his son shortly before his death as he did his other parcels. Decedent and his son had jointly owned the Fifth Street parcel for nine years before decedent's death. Upon decedent's death, the parcel went over to decedent's son by operation of law regardless of any postmortem discussions decedent's son had with his sisters. The fate of the Fifth Street parcel does not hinge upon the evidentiary hearing because, by its own terms, decedent's will reaches only *his properties* that *he transferred* outside the will.

In focusing on the Fifth Street parcel, I do not mean to suggest that the other three parcels that decedent transferred into joint tenancy with his son on the same day he signed his will cannot be found to be similarly situated in law. I assume that the district court will establish, among other things, the chronological sequence of decedent's signing of the deeds and his signing of his will. The inference in the will is that the deeds had been signed before the will was signed. Whatever the circumstances underlying the execution of the will and deeds, and the postmortem comments of decedent's son, the classical differences between probate and

non-probate property distribution must be at least recognized in the district court, whether or not controlling, and regardless of "customary" estate planning practices in the community.