Elizabeth PETERSON, Respondent,

v.

HOLIDAY RECREATIONAL
INDUSTRIES, INC., et
al., Appellants.

No. A06–421.

Court of Appeals of Minnesota.

Jan. 2, 2007.

Review Denied Feb. 28, 2007.

Robert A. Gust, Gust Law Firm, Minneapolis, MN and William R. Skolnick, Minneapolis, MN, for appellants.

David M. Lawson, Minneapolis, MN, for respondent.

Considered and decided by
KLAPHAKE, Presiding Judge; WORKE, Judge; and ROSS, Judge.

## OPINION

WORKE, Judge.

On appeal from the district court's ruling that respondent was entitled to all right, title, and interest in a corporation, including real property, appellants argue that (1) the district court lacked subject-matter jurisdiction to address property located in another county and lacked the authority to deny appellants' request for a change of venue; (2) respondent's inequitable conduct should have precluded the district court from granting respondent relief; (3) respondent lacked standing to challenge transfer of title to the property; (4) the statute of frauds should have precluded the district court from ruling that title was in respondent's name; (5) the requirements for a constructive trust were not satisfied; (6) a constructive trust cannot be used to transfer title to real property; (7) because respondent's evidence regarding title to the property was internally inconsistent, it cannot support the district court's ruling; (8) respondent waived any claim to the property; and (9) the record either does not support the district court's ruling or shows that a new trial is required. We affirm in part and reverse in part.

## FACTS

In 1977, respondent Elizabeth Peterson and her then-husband, James Peterson, created Custom Coach & Van (later renamed Custom Coach RV & Marine, Inc.). In 1989, Custom Coach purchased property located in Anoka County. After the closing on the property, it was discovered that the property was contaminated. A lawsuit ensued between the Petersons and the seller of the property. The resulting judgment against Custom Coach and the personal judgment against the Petersons were affirmed on appeal. *See Custom Coach RV, Inc. v. Gertzen,* Nos. C8–90–2208, CX–90–2209, 1991 WL 90864 (Minn. App. June 4, 1991). Custom Coach filed bankruptcy and discharged the judgment; however, the personal judgment against the Petersons remained. In 1991, respondent and James Peterson created appellant Holiday Recreational Industries, Inc. (HRI) for the purpose of selling recreational vehicles. The sole shareholder of

HRI was Obelyn Peterson, James Peterson's mother.

In 2001, respondent and James Peterson separated, and Obelyn Peterson's health began to deteriorate. At that time, HRI's assets and land were transferred to appellant Patricia Peterson (respondent and James Peterson's daughter) for $1. Appellant Peterson and respondent met to discuss possibly setting up a trust to hold certain assets, including HRI's assets and land, for the benefit of respondent and James Peterson. While an unsigned, handwritten note in appellant Peterson's handwriting was introduced into evidence regarding the discussion at the meeting, no actual trust documents were created to show whether an agreement was reached regarding a trust.

Respondent continued to be employed by HRI until October 2002, when appellant Peterson terminated respondent's employment for alleged misconduct. Prior to the finalization of their divorce, James Peterson signed a Release of All Claims to the HRI assets and land contingent upon receipt of title and interest in a campground owed by respondent and James Peterson. No similar release of claims was ever signed by respondent.

In 2004, respondent filed a lawsuit in Hennepin County against appellants alleging breach of lifetime employment contract; conversion; theft, in violation of Minn.Stat. § 604.14 (2004); unjust enrichment, failure to pay commissions, in violation of Minn.Stat. § 181.14 (2004); defamation; and constructive trust or equitable return of business. Appellants filed a demand for change of venue as a matter of right to Anoka County, where HRI's assets and land are located. The district court denied the demand and proceeded with a trial. The district court found in favor of respondent and ordered appellant Peterson to convey all right, title, and

interest in HRI's land and stock to respondent. Appellants sought post-judgment relief, including a new trial, which the district court denied. This appeal follows.

## ISSUES

I. Is appellants' challenge to the district court's venue decision properly before this court?

II. Does respondent's inequitable conduct preclude the district court from granting her relief?

III. Did respondent lack standing to challenge the transfer of HRI's assets and land from Obelyn Peterson to appellant Peterson?

IV. Is respondent's claim to HRI barred by the statute of frauds?

V. Were the requirements for a constructive trust met?

VI. Can a constructive trust be used to transfer title to real property?

VII. Does the evidence support the district court's ruling that HRI's land and stock had been held for the benefit of respondent?

VIII. Did respondent waive her claim to the property?

IX. Are appellants entitled to a new trial?

## ANALYSIS

### I.

■ Appellants argue that the district court erred in denying their demand for change of venue as a matter of right, which was based on the fact that, among other reasons, the real estate was located in Anoka County. Cf. Minn.Stat. 542.02 (2004) (addressing venue of actions relating to real property). The district court denied the demand finding that the case had been properly filed in Hennepin County because "Plaintiff [respondent] resides

in Hennepin County and· events in this action arose in Hennepin County and underlie [respondent's] claims in this case." Further, the district court held that appellants "failed to show that they would be prejudiced if [v]enue was retained in Hennepin County."

The district court's decision was based on statutory interpretation, a question of law, which would be reviewed de novo if this court were to review it. *Hibbing Educ. Ass'n v. Pub. Employment Relations Bd.*, 369 N.W.2d 527, 529 (Minn. 1985). For the reasons explained below, however, we conclude that appellants' challenge to the district court's venue decision is not properly before this court.

"It has been *the* long accepted practice in this state to seek review of a venue order by petitioning this court for a writ of mandamus." *Ebenezer Soc'y v. Minn. State Bd. of Health*, 301 Minn. 188, 193, 223 N.W.2d 385, 388 (1974) (emphasis added). "[I]t is proper, and often preferable, to determine the place of trial prior to the actual trial of the case rather than afterwards." *Castle v. Vill. of Baudette*, 267 Minn. 140, 142, 125 N.W.2d 416, 417 (1963). Appellants did not file a petition for mandamus when the district court denied their request for change of venue; rather, they waited until the conclusion of the trial to challenge the decision in this appeal. The proper practice would have been to immediately file a petition for mandamus with this court challenging the venue ruling. While it is our impression that venue would have been more properly situated in Anoka County where the real property is located, we will not stray from the long-accepted practice of addressing venue challenges via a petition for mandamus prior to trial.[1] Because appellants did not file a petition for mandamus following the district court's ruling that venue in Hennepin County was appropriate, that issue is not properly before us and we decline to review it. We note, however, that "[v]enue in civil actions is not jurisdictional." *Rosnow v. Comm'r of Pub. Safety*, 444 N.W.2d 591, 592 (Minn.App.1989) (citing *Claseman v. Feeney*, 211 Minn. 266, 268, 300 N.W. 818, 819 (1941)), *review denied* (Minn. Oct. 13, 1989). Therefore, any error in the district court's venue ruling did not deprive it of jurisdiction to hear the parties' dispute.

## II.

Appellants next argue that because respondent was engaged in a campaign to defraud creditors, she had unclean hands and the district court should

---

1. To the extent that certain appellate opinions could be read to permit review of a district court's venue decision on appeal from a final judgment or in another non-mandamus manner, we note that the parties cite, and research reveals, no case in which the propriety of challenging a district court's venue decision in a non-mandamus manner was addressed, meaning such cases are distinguishable. *See Skelly Oil Co. v. Comm'r of Taxation*, 269 Minn. 351, 371, 131 N.W.2d 632, 645 (1964) (stating that opinion language must be read in light of issue presented); *Chapman v. Dorsey*, 230 Minn. 279, 288, 41 N.W.2d 438, 443 (1950) (deciding appeal based on the assumption that appellate jurisdiction existed, without actually addressing whether it did, is not precedential regarding existence of appellate jurisdiction). Moreover, consistent with the idea that venue objections can be waived if not promptly raised, the parties cite, and research reveals, no case in which venue-related relief was granted on appeal from a final judgment after a trial had occurred. *See Kowalke v. Lutheran Welfare Soc'y of Minneapolis (In re Guardianship of Kowalke)*, 232 Minn. 292, 306–07, 46 N.W.2d 275, 284 (1950) (stating "[a]ppellants cannot be allowed to save their objection to the venue awaiting the probate court's decision on their own petition, and then, after suffering an adverse decision, raise their objection to the venue for the first time on appeal to the district court.")

not have invoked its equitable powers. It is within the district court's discretion to grant equitable relief and "[o]nly a clear abuse of that discretion will result in reversal[.]" *Nadeau v. County of Ramsey,* 277 N.W.2d 520, 524 (Minn.1979).

Under the doctrine of unclean hands: "he who seeks equity must do equity, and he who comes into equity must come with clean hands." *Hruska v. Chandler Assocs., Inc.,* 372 N.W.2d 709, 715 (Minn.1985). A party "may be denied relief where his conduct has been unconscionable by reason of a bad motive, or where the result induced by his conduct will be unconscionable either in the benefit to himself or the injury to others." *Johnson v. Freberg,* 178 Minn. 594, 597–98, 228 N.W. 159, 160 (1929). "The [unclean-hands doctrine] does not apply where the relief sought by the plaintiff and the equitable right claimed by the defendant belong to or grow out of two entirely separate and distinct matters or transactions." *Lindell v. Lindell,* 150 Minn. 295, 298–99, 185 N.W. 929, 930 (1921).

> [The defendant's] adverse equity must grow out of the very controversy before the court or out of such transactions as the record shows were part of its history, or where it is so connected with the cause in litigation as to be presented in the pleadings and proofs, with full opportunity afforded to the plaintiffs to explain or refute the charges.

*Id.* at 299, 185 N.W. at 930.

In denying appellants' motion for amended findings and/or a new trial, the district court concluded that "*Johnson* is differentiated from the present matter because in *Johnson,* both parties to the contract in question were guilty of fraud as to each other." The district court found that "[n]o such fraud exists between the parties in the present matter, thus the [c]ourt is not persuaded by [appellants'] argument."

However, respondent testified that when she and James Peterson created HRI, the business assets and land were placed in the name of Obelyn Peterson, and later transferred solely to appellant Peterson, for the purpose of defrauding judgment creditors. In its findings, the district court essentially acknowledged that respondent came to court with unclean hands because HRI's assets and land were not placed in the name of respondent or James Peterson "until the personal judgment against [them] became unenforceable as a matter of law"; however, the fraud did not exist between respondent and appellant Peterson. Even if the district court was correct in noting that the transactions involved here do not precisely reflect *Johnson,* they are not so different under *Lindell* that the unclean-hands doctrine does not apply. Further, regardless of the degree of distinction between the transactions, respondent had, under *Lindell,* an opportunity to adequately litigate appellants' allegations that her conduct constituted fraud. Because respondent's adverse equity grew out of a transaction that was part of the history of this case—Obelyn Peterson's transfer of her interest in HRI to appellant Peterson—the unclean-hands doctrine does apply in this case. Therefore, the district court abused its discretion in finding that the unclean-hands doctrine does not apply in this case and invoking its equitable powers.

Respondent argues that appellant Peterson also had unclean hands because she received HRI's assets and land for the purchase price of $1, when the corporation had approximately $460,000 in equity. However, "[i]nadequacy of consideration, standing alone, is not sufficient to establish unconscionable conduct unless it is so great as to shock the conscience[.]" *Johnson,* 178 Minn. at 598, 228 N.W. at 160. It is not a "shock to the conscience" that a

business would be transferred from grandmother to granddaughter for $1, which would be considered inadequate consideration in other circumstances.

### III.

Appellants next argue that respondent lacks standing to challenge the transferring of HRI from Obelyn Peterson to appellant Peterson. We review de novo the legal issue of standing. *Nash v. Wollan*, 656 N.W.2d 585, 588 (Minn.App.2003) (citing *Frost–Benco Elec. Ass'n v. Minn. Pub. Utils. Comm'n*, 358 N.W.2d 639, 642 (Minn.1984)), *review denied* (Minn. Apr. 29, 2003). "An individual has standing to maintain a suit by showing an injury to some interest, economic or otherwise, which differs from injury to the interests of other citizens generally." *Vern Reynolds Constr., Inc. v. City of Champlin*, 539 N.W.2d 614, 617 (Minn.App.1995) (quotation omitted), *review denied* (Minn. Dec. 20, 1995).

In the absence of fraud or mistake, a deed is presumed to be the final agreement of the parties. *B–E Constr., Inc. v. Hustad Dev. Corp.*, 415 N.W.2d 330, 331 (Minn.App.1987), *review denied* (Minn. Jan. 20, 1988). A party challenging a deed must present clear and convincing evidence to overcome the presumption that a deed is an absolute conveyance. *See Beasy v. Misko*, 297 Minn. 527, 528, 211 N.W.2d 881, 882 (1973). Obelyn Peterson was the sole owner of HRI's assets and land until she transferred her interest into the sole name of appellant Peterson. Respondent does not, and cannot, dispute that she was not an owner of HRI, and was not a party to the transferring of HRI from Obelyn Peterson to appellant Peterson. Because respondent was not an owner of HRI and cannot show an injury to some interest, economic or otherwise, she lacks standing to challenge the transaction

between Obelyn Peterson and appellant Peterson. Further, the analysis of whether a fraud existed is unnecessary because even if a finding could be made that the transfer of HRI was fraudulent, the only person with standing to make that claim is Obelyn Peterson.

### IV.

Appellants next argue that respondent's claimed right to HRI's property is barred by the statute of frauds. Under the statute of frauds, a conveyance of real property or an agreement to convey real property is invalid unless it is reduced to writing. Minn.Stat. 513.04 (2004). Minn.Stat. § 513.03 (2004) requires trusts to be in writing, and Minn.Stat. 513.04 requires that every estate or interest in land be created "by deed or conveyance in writing, subscribed by the parties creating" or conveying the interest. With the exception of a handwritten note, there is no evidence of any type of conveyance from appellant Peterson to respondent. All ownership documents to HRI's assets and land list appellant Peterson as the sole owner. While the unsigned, handwritten note in appellant Peterson's handwriting does not purport to be a contract or a conveyance, even if there was an agreement to create a family trust, it embraced an interest in real estate and, therefore, was subject to the statute of frauds.

### V.

Appellants argue that the district court erred in granting respondent a constructive trust because a constructive trust is not a remedy for a defective trust or an unenforceable oral trust. Whether a constructive trust should be imposed is a question of fact for the district court that this court reviews for clear error. *Freundschuh v. Freundschuh*, 559 N.W.2d

706, 711 (Minn.App.1997), *review denied* (Minn. Apr. 24, 1997).

 "A constructive trust is a remedial device by which the holder of legal title is held to be a trustee for the benefit of another who in good conscience is entitled to the beneficial interest." *Wilcox v. Nelson,* 227 Minn. 545, 550, 35 N.W.2d 741, 744 (1949). "The elements of a cause of action to enforce a constructive trust are the existence of a fiduciary relation and the abuse by defendant of confidence and trust bestowed under it to plaintiff's harm." *Id.* A constructive trust "arises by operation of law without any reference to any actual or supposed intention of creating a trust and frequently directly contrary to such intention." *Sieger v. Sieger,* 162 Minn. 322, 324, 202 N.W. 742, 743 (1925). "In finding a constructive trust, the court is not bound by a formula, but is free to effect justice to avoid unjust enrichment according to the equities." *Freundschuh,* 559 N.W.2d at 711. The district court must be "persuaded by clear and convincing evidence that the imposition of a constructive trust is justified to prevent unjust enrichment." *In re Estate of Eriksen,* 337 N.W.2d 671, 674 (Minn.1983). A constructive trust may be imposed when there is "clear and convincing evidence that it would be morally wrong for the property holder to retain" the property. *Spiess v. Schumm,* 448 N.W.2d 106, 108 (Minn.App.1989) (quotation omitted). The district court concluded that "[appellant] Peterson is not entitled to the benefit of equity in [t]he HRI [l]and. Retention of [t]he HRI [l]and or the HRI stock by [appellant] Peterson would be unjust[.]"

The evidence shows that appellant Peterson was the sole legal owner of HRI's assets and land. With the exception of respondent's testimony, there is no evidence that appellant Peterson had a fiduciary relationship with respondent, and,

therefore, she did not abuse any such relationship. The necessary elements of a constructive trust were not proven in this case. Additionally, there is nothing in the record to clearly and convincingly suggest that it would be "morally wrong for [appellant Peterson] to retain" the HRI assets and land. The district court's finding that a constructive trust existed is clearly erroneous.

## VI.

 Appellants also argue that a constructive trust cannot be used to compel a conveyance of title. We agree.

> The establishment of a constructive trust does not set aside the title to the property but instead proceeds on the theory that, even though legal title rests in the grantee of the deed, equity will declare that such title is held in trust for someone else to whom it rightfully belongs.

*In re Estate of Vittorio,* 546 N.W.2d 751, 755 (Minn.App.1996) (quotation omitted). "[P]arol evidence is admissible to show establishment of a constructive trust." *Id.* "A constructive trust also is exempt from the statute of frauds because it arises by operation of law." *Id.* Here, there was a dispute as to whether HRI's assets and land were to be held in trust for the benefit of respondent and James Peterson. There is no direct evidence to support this claim. Even if such evidence did exist, the district court did not have the authority to set aside the title to HRI's assets and land and transfer them to respondent. Title would remain in the name of appellant Peterson to be held in trust for "someone else to whom it rightfully belongs"—in this case, respondent.

## VII.

Next, appellants argue that the district court's conveyance of title conflicts with

respondent's testimony that HRI's assets and land were to be held in trust for her heirs. The district court ordered that HRI's assets and land be immediately transferred to respondent because a constructive trust existed. As stated earlier, if a constructive trust existed, title would remain in the name of appellant Peterson to be held in trust for "someone to whom it rightfully belongs." As per respondent's testimony, HRI's assets and land would be held in trust for respondent's benefit during her lifetime, and then to her heirs. The district court erred in transferring the title to respondent rather than ordering that it be held in trust, and it disregarded respondent's testimony regarding her alleged intent that the property was to be held in trust for her heirs.

## VIII.

■ Appellants also argue that respondent orally waived any claim that she may have had to HRI's assets and land. This argument is based on respondent's testimony that James Peterson would not have signed a release of claims to HRI's assets and land if he did not have any in the first place. Therefore, because James Peterson had an interest in HRI, so did respondent and she did not sign a release of her claims. Appellants argue that based on the agreement respondent and James Peterson reached during their divorce regarding ownership of the campground, respondent and James Peterson agreed to sign away any claims that they may have had in HRI. Respondent was supposed to sign a release and never did so; however, her oral agreement to release the claims was ignored by the court. There is no evidence, besides appellant Peterson's testimony, to support the fact that respondent was supposed to sign a release to any claims she may have had to HRI's assets and land. Further, the fact that James Peterson signed a release to any claims he

may have had to HRI's assets and land is not proof that he actually had any valid claims.

## IX.

■ Finally, appellant Peterson argues that she is entitled to a new trial. This argument is based on the fact that she had to proceed to trial unrepresented. After appellant Peterson's attorney of record withdrew, the district court informed her that trial would not be postponed for lack of counsel. Appellant Peterson proceeded pro se. Appellant Peterson's lack of counsel at trial is not a sufficient ground to grant her a new trial.

## DECISION

Because appellants did not file a petition for mandamus following the district court's ruling on the demand for change of venue, we decline to address the district court's venue ruling. The district court abused its discretion in finding that the unclean-hands doctrine did not apply in this case and should not have invoked its equitable powers. Further, the inadequacy of consideration for the transfer of HRI's assets and land to appellant Peterson from her grandmother for $1 was not a "shock to the conscience." Respondent also did not have standing to challenge the transaction between Obelyn Peterson and appellant Peterson because she failed to present clear and convincing evidence that she had an ownership interest in HRI's assets and land. While respondent claims that HRI's assets and land were to be held in trust for her benefit, there is no evidence of a conveyance between respondent and appellant Peterson, and any conveyance would have been subject to the writing requirement under the statute of frauds. The district court clearly erred in finding that a constructive trust existed, and in finding that because of the constructive trust, title to

HRI's assets and land should be transferred to respondent. Finally, there is no evidence to support appellant Peterson's claim that respondent orally waived her claims to HRI's assets and land, and appellant Peterson's lack of counsel at the time of trial is not a sufficient ground to grant her a new trial. The district court's order that appellant Peterson convey all right, title, and interest in HRI's assets and land to respondent is reversed.

**Affirmed in part and reversed in part.**