*This opinion is nonprecedential except as provided by*
*Minn. R. Civ. App. P. 136.01, subd. 1(c).*

**STATE OF MINNESOTA**
**IN COURT OF APPEALS**
**A25-1355**

In the Matter of the Welfare of the Child(ren) of: T. K. H., B. M. P., G. J. S., Parents.

**Filed February 9, 2026**
**Affirmed; motion denied**
**Cochran, Judge**

Wadena County District Court
File No. 80-JV-25-76

T.K.H., Cambridge, Minnesota (pro se appellant)

Janet Reiter, Chisago County Attorney, Amanda N. Heifort, Assistant County Attorney, Center City, Minnesota (for respondent Wadena County Human Services)

Angela J. Sonsalla, Perham, Minnesota (for guardian ad litem Mary Weaver)

Considered and decided by Larkin, Presiding Judge; Cochran, Judge; and Kirk, Judge.[*]

**NONPRECEDENTIAL OPINION**

**COCHRAN**, Judge

Appellant mother challenges the district court's order denying her motion for a new trial following the termination of her parental rights. Appellant argues the district court abused its discretion when it denied the motion because she demonstrated that (1) she received ineffective assistance of counsel at trial, which violated her right to a fair trial;

---

[*] Retired judge of the Minnesota Court of Appeals, serving by appointment pursuant to Minn. Const. art. VI, § 10.

(2) she was denied her constitutional right to due process; (3) fraud on the court occurred through false testimony and fabricated reports at trial; and (4) the district court lacked jurisdiction to enter the order terminating her parental rights due to improper venue. Because appellant has not met her burden to demonstrate the district court abused its discretion when it denied her motion for a new trial, we affirm.

## FACTS

Appellant T.K.H. is the mother of two children—Child 1, born in 2016, and Child 2, born in 2020. The children have different fathers. The respective fathers of the children, G.J.S. and B.M.P., take no part in this appeal.

Respondent Wadena County Human Services (WCHS) became involved in the spring of 2024 when law enforcement received reports regarding mother and the children. Those reports expressed concerns that mother and her children were living out of mother's vehicle and that mother had a history of drug use. The reports also expressed concern about mother's mental health.

*Child in Need of Protection or Services (CHIPS) Petition*

On April 23, 2024, Child 1 and Child 2 were placed into emergency protective care at the request of WCHS based on concerns that the children were "found in surroundings or conditions which endanger the child[ren]'s health or welfare." On the welfare-hold request form, WCHS noted that mother was a "flight risk" and that she "[a]bsconded from child protection in Illinois . . . ." The form also noted that Child 1, then age seven, was not enrolled in school and that mother tested positive for controlled substances on March 14, 2024.

2

On April 25, 2024, WCHS filed a CHIPS petition. The petition raised concerns about mother and the children living out of mother's car, mother's chemical dependency, mother's neglect of the children, and Child 1's absence from school. That same day, mother applied for, and the court appointed, an attorney (Attorney 1) to represent mother. The following day, an emergency protective care hearing was held, and the district court ordered the out-of-home placement of the children. Shortly after the hearing, the county developed case plans for the children and mother that included visitation as well as measures to address the conditions that led to the out-of-home placement. Mother was involved in the development of the plans.

On October 29, 2024, the district court held a trial on the CHIPS petition. Mother did not attend the trial. Following the trial, the district court filed an order concluding that WCHS had proven by clear and convincing evidence that the children were in need of protection or services. The district court based its decision on evidence that mother "has struggled with her mental health, chemical use, and homelessness and as a result has been unable to meet the [c]hildren's basic needs for food, shelter, education and other required care." The district court ordered that WCHS "shall retain custody" of the children and approved the continued out-of-home placement of the children. The court also ordered WCHS to develop updated case plans with mother and ordered mother to complete a comprehensive chemical use assessment (with WCHS and the guardian ad litem (GAL) listed as collateral contacts), follow all resulting recommendations, and abstain from mood-altering substances, among other terms.

3

Following the trial, mother agreed to updated versions of the case plans (one for each child).  Mother's case plans included five goals: address mother's substance use, stabilize mother's mental health, maintain safe and stable independent housing, improve and maintain mother's relationship with her children, and ensure the children's safety and wellbeing.  Both case plans required, among other terms, that mother: (a) complete a chemical use assessment with WCHS and follow all resulting recommendations, (b) abstain from substance use unless prescribed, (c) comply with random drug testing, (d) develop a relapse prevention plan, (e) remain law abiding, (f) sign all necessary releases to ensure open communication, (g) attend visits with the children as scheduled by WCHS, (h) complete a parenting education class, (i) participate in family therapy with the children's support system, (j) demonstrate a period of at least six months of sobriety and follow a relapse prevention plan to ensure the safety of her children, (k) complete a diagnostic mental health assessment and successfully follow the recommendations thereof, (l) reduce mental health symptoms and demonstrate stability for a period of at least six months, and (m) address and take care of physical and mental health needs per doctor recommendations.

On December 13, mother obtained private counsel (Attorney 2) to represent her.  A permanency progress hearing was held on December 17, at which the district court found that mother had not made substantial progress on her case plan.[1]

---

[1] At this time, neither father had any contact with the children.

*Termination of Parental Rights (TPR) Petition*

On January 29, 2025, WCHS filed a TPR petition to involuntarily terminate mother's parental rights to both children, citing the following statutory bases: (1) that mother has abandoned the children, (2) that mother has substantially, continuously, or repeatedly refused or neglected to comply with the duties imposed upon her by the parent and child relationship, (3) that mother is palpably unfit to be a party to the parent and child relationship, (4) that mother failed to correct the conditions leading to the out-of-home placement despite reasonable efforts by the county, and (5) that the children are neglected and in foster care.[2] *See* Minn. Stat. § 260C.301, subd. 1(b)(1)-(4), (7) (2024). Mother entered a denial and requested a change of venue, which the district court later denied. On March 26, the district court approved WCHS's request to cease reunification efforts with mother.

On April 30, Attorney 2 requested leave to withdraw as mother's counsel. Attorney 2 cited differences with mother about "how this matter should be litigated" and he noted that, despite Attorney 2's "numerous" attempts to contact mother, "she has not returned or accepted [his] phone calls." Nonetheless, the district court still required Attorney 2 to attend a pretrial hearing on May 2. At the hearing, mother indicated that she wished to discharge Attorney 2 and understood that discharge of Attorney 2 would not be a basis for continuing the TPR trial scheduled for May 5. But, prior to the start of trial, mother filed a request for a court-appointed attorney, and at the scheduled start of trial,

---

[2] The petition also sought to terminate the parental rights of B.M.P., the father of Child 2. As noted above, the termination of B.M.P.'s parental rights is not at issue in this appeal.

5

WCHS supported a continuance to ensure the protection of mother's rights. The district court appointed a new attorney for mother—Attorney 3.

The trial was held on July 16. Mother was represented by Attorney 3. At trial, WCHS presented testimony from a WCHS child protection social worker and the GAL for both children. Mother did not testify, but the court admitted a number of exhibits offered by mother's attorney and stipulated to by the parties. At the time of trial, the children had been placed out of the home for 449 days.

At trial, the social worker testified about her work with mother and the children beginning with the CHIPS case. The social worker testified both children had needs that were different or more particularized than the average child. According to the social worker, Child 1 had nightmares and was in "therapy weekly to . . . help process . . . whatever he's going through." The social worker indicated that, while Child 1 had struggled academically and "almost didn't get to go into 2nd grade" due to serious deficiencies in his math and reading levels, his academic performance had improved since his out-of-home placement began. She also testified that Child 2 had behavioral problems, including sensory issues and emotional outbursts. He also had "quite a few cavities" and needed eyeglasses.

In addition, the social worker testified to mother's substance use issues and her compliance with the requirements of the case plans relating to substance use. The social worker testified that mother completed a chemical use assessment in accordance with the case plans but did not list WCHS as a collateral contact as required. Mother also refused required drug testing on several occasions, tested positive for methamphetamine and

amphetamine on multiple occasions, admitted to using THC and methamphetamine, and was arrested for driving while intoxicated (DWI) on January 4, 2025. Because of her drug use while on her case plans, mother was required to complete additional chemical assessments. She completed a second chemical use assessment in November 2024 and started outpatient treatment for chemical dependency, but she was discharged after two weeks due to being "unsuccessful" in the program. At that time, she stated that she did not need to be in treatment. She then completed another chemical use assessment in February 2025 following her DWI arrest and started a new treatment program in March but did not attend regularly.

The social worker provided additional testimony about other aspects of mother's compliance with her case plans. According to the social worker, as of the time of trial, mother failed to comply with the following case-plan requirements: (1) remain law abiding, (2) follow through on the recommendations of her chemical assessments, (3) abstain from use of all chemical substances except prescribed medication, (4) comply with random drug testing, (5) develop a relapse prevention plan, (6) obtain a parenting assessment, (7) develop skills in therapy to manage trauma responses and anger, (8) obtain employment, (9) complete a parent education class, and (10) attend scheduled visits with the children.[3]

The district court also heard testimony from the GAL about mother and the children. She testified that she met with mother monthly. According to the GAL, mother would

---

[3] According to the district court, mother later "submitted an Exhibit showing proof of completion of some online parenting course."

often "yell and scream and get upset and lose her cool" and "would show up very dirty and unclean." The GAL suspected that mother appeared either ill or "withdrawing" at meetings. She claimed that mother had a serious problem following through with her commitments to the children and that, while mother loved the children, "her actions do not follow . . . her words." The GAL also testified about the children and stated that they were doing well in their foster home placement. The court found both the social worker and the GAL to be credible.

In a thorough and detailed order filed on July 31, 2025, the district court concluded that WCHS proved by clear and convincing evidence three of the five statutory grounds alleged in the TPR petition for termination of mother's parental rights. The three statutory grounds were: (1) mother is palpably unfit to be a party to the parent and child relationship, (2) mother failed to correct the conditions leading to removal of the children, and (3) the children were neglected and in foster care. The district court also found that WCHS made reasonable efforts to reunify mother and the children and that termination of mother's parental rights is in the best interests of the children.[4] Having found that the statutory requirements for termination were met, the district court granted WCHS's petition to terminate mother's parental rights to the children.

On August 4, mother then made a motion for a new trial without counsel, arguing ineffective assistance of counsel and due-process violations. A week later, on August 11,

[4] The district court also ordered the involuntarily termination of B.M.P.'s parental rights on the ground that he abandoned his child and granted the voluntary termination of G.J.S.'s parental rights.

8

mother's counsel moved for a new trial based on the interests of justice and asserting that the decision was not supported by the evidence or was contrary to the law. The district court held an evidentiary hearing on mother's request for a new trial, at which mother testified after mother waived the attorney-client privilege.

Following the hearing, the district court denied mother's request for a new trial in a written order. The district court rejected mother's ineffective assistance of counsel argument because mother failed to demonstrate she was prejudiced by counsel's alleged errors. The district court also rejected mother's due-process argument, noting that "[o]utside of [m]other's claim of ineffective assistance of counsel, [m]other does not meaningfully articulate any other violation of her due process rights." Finally, the court found there was no legal support for mother's ongoing contention that venue in Wadena County was not proper. Based on these determinations, the district court concluded that mother had not demonstrated that she was entitled to a new trial.

Mother appeals.[5]

---

[5] On January 30, 2026, mother filed a motion asking us to remand the case to the district court for that court to address motions mother filed in that court after she filed this appeal. The crux of mother's motion seems to be that rulings on the motions she filed in district court are necessary for this court to have "a complete record" for purposes of this appeal. Mother cites no authority for the relief sought. Thus, her motion is not properly before us. *See State, Dep't of Lab. & Indus. v. Wintz Parcel Drivers, Inc.*, 558 N.W.2d 480, 480 (Minn. 1997) (declining to address inadequately briefed question); *Melina v. Chaplin*, 327 N.W.2d 19, 20 (Minn. 1982) (noting that inadequately briefed questions are not properly before an appellate court); *In re Welfare of Child of P.T.*, 657 N.W.2d 577, 586 n.1 (Minn. App. 2003) (applying *Wintz* in a juvenile-protection appeal), *rev. denied* (Minn. Apr. 15, 2003); *In re Welfare of Child of L.M.L.*, 730 N.W.2d 316, 322 (Minn. App. 2007) (applying *Melina* in a juvenile-protection matter). Further, as this court noted in its order filed on October 23, 2025, in this appeal: Materials not before the district court when it made the decision(s) at issue in the appeal are not part of the record on appeal. Minn. R. Civ. App.

**DECISION**

In this appeal, in which mother is self-represented, mother does not challenge the district court's order terminating her parental rights. Instead, she limits her appeal to the district court's denial of her motion for a new trial. A district court may grant a new trial in a TPR case for any of the following reasons:

> (a)     irregularity in the proceedings of the court, referee, or prevailing party, or any order or abuse of discretion whereby the moving party was deprived of a fair trial;
>
> (b)  misconduct of counsel;
>
> (c)     fraud, misrepresentation, or other misconduct of the county attorney, any party, their counsel, or their guardian ad litem;
>
> (d)     accident or surprise that could not have been prevented by ordinary prudence;
>
> (e)     material evidence, newly discovered, which with reasonable diligence could not have been found and produced at the trial;
>
> (f)     errors of law occurring at the trial and objected to at the time, or if no objection need have been made, then plainly assigned in the motion;

---

P. 110.01; *see In re Nelson*, 495 N.W.2d 200, 202, 204 (Minn. 1993) (ruling we should not have considered a letter sent to district court after that court made the ruling at issue on appeal). Thus, in this appeal, we could not consider whatever might result from the remand mother seeks. We deny mother's motion.

(g)     a finding that the statutory grounds set forth in the petition are proved is not justified by the evidence or is contrary to law; or

(h)     if required in the interests of justice.

Minn. R. Juv. Prot. P. 21.04.

We review the denial of a motion for a new trial in a juvenile-protection case for an abuse of discretion. *In re Welfare of V.R.*, 355 N.W.2d 426, 430 (Minn. App. 1984) (affirming denial of new trial), *rev. denied* (Minn. Jan. 11, 1985). "A district court abuses its discretion by making findings of fact that are unsupported by the evidence, misapplying the law, or delivering a decision that is against logic and the facts on record." *Woolsey v. Woolsey*, 975 N.W.2d 502, 506 (Minn. 2022) (quotation omitted). The district court's factual findings are reviewed for clear error. *V.R.*, 355 N.W.2d at 430-31. A finding is clearly erroneous if we are left with the firm conviction that a mistake has been made. *In re Civ. Commitment of Kenney*, 963 N.W.2d 214, 221 (Minn. 2021).

Mother argues the district court abused its discretion when it denied her motion for a new trial because: (1) she received ineffective assistance of counsel at the TPR trial, violating her right to a fair trial, (2) she was denied her constitutional right to due process at the trial, (3) fraud on the court occurred through false testimony and fabricated reports at the trial by the social worker and GAL, and (4) the district court lacked jurisdiction to enter the TPR order due to improper venue. We consider each argument in turn and discern no abuse of discretion by the district court.

*Ineffective Assistance of Counsel*

Rule 21.04 of the Minnesota Rules of Juvenile Protection Procedure provides that a district court may grant a new trial for "misconduct of counsel" but it does not expressly provide that a new trial may be granted based on a showing of ineffective assistance of counsel. Minn. R. Juv. Prot. P. 21.04. But, as the district court noted, rule 21.04 also permits a district court to order a new trial "if required in the interests of justice." *Id.* We agree with the district court that the interests of justice may support the grant of a new trial if mother received ineffective assistance of counsel at the TPR trial. But, for the reasons explained below, we also agree with the district court that mother is not entitled to a new trial on this basis because mother failed to meet her burden to demonstrate ineffective assistance of counsel.

A parent has "the right to effective assistance of counsel in connection with a proceeding in juvenile court," including in connection with a petition to terminate parental rights. Minn. Stat. § 260C.163, subd. 3(a) (2024). To determine whether a party received ineffective assistance of counsel, Minnesota courts typically apply the standard set out in *Strickland v. Washington*, 466 U.S. 668, 687 (1984), including in juvenile-protection matters. *See In re Welfare of L.B.*, 404 N.W.2d 341, 345 (Minn. App. 1987) (applying *Strickland* to an ineffective-assistance-of-counsel claim in a juvenile-protection appeal). To prevail on an ineffective-assistance-of-counsel claim under the *Strickland* standard, the party alleging ineffective assistance of counsel has the burden to demonstrate (1) that "counsel's performance fell below an objective standard of reasonableness," and (2) "that a reasonable probability exists that, but for . . . counsel's unprofessional errors, the result

12

of the proceedings would have been different." *Davis v. State*, 784 N.W.2d 387, 391 (Minn. 2010) (citing *Strickland*, 466 U.S. at 688, 694)). A court "may dispose of a claim on one prong without considering the other." *Lussier v. State*, 853 N.W.2d 149, 154 (Minn. 2014) (citation omitted).

We review the district court's findings of fact made during the course of its consideration of an ineffective-assistance-of-counsel claim for clear error, but we review de novo the district court's application of the two *Strickland* requirements. *Pearson v. State*, 891 N.W.2d 590, 600 (Minn. 2017). The district court limited its analysis to the second prong and concluded that mother did not meet her burden on that prong.

Mother argues the district court erred in denying her motion for a new trial based on ineffective assistance of counsel because she established both *Strickland* prongs. More specifically, she argues that she demonstrated that her counsel's performance fell below an objective standard of reasonableness because her attorney did not "call [mother] to testify, introduce material evidence, [or] challenge false reports" of the WCHS witnesses. And she contends that there would have been a different outcome "had counsel presented the full defense." We are not persuaded.

We begin our analysis with the first *Strickland* prong. "The objective standard of reasonableness is defined as representation by an attorney exercising the customary skills and diligence that a reasonably competent attorney would perform under similar circumstances." *State v. Vang*, 847 N.W.2d 248, 266-67 (Minn. 2014) (quotation omitted). "There is a strong presumption that counsel's performance falls within the wide range of

13

reasonable professional assistance." *Pierson v. State*, 637 N.W.2d 571, 579 (Minn. 2002) (quotation omitted).

Mother's claims relate to her counsel's decisions about which witnesses to call, which exhibits to offer, and how to cross-examine the WCHS witnesses. These are matters of trial strategy. *See State v. Bobo*, 770 N.W.2d 129, 138 (Minn. 2009) ("What evidence to present to the jury, what witnesses to call, and whether to object are part of an attorney's trial strategy which lie within the proper discretion of trial counsel and will generally not be reviewed later for competence."); *State v. Vick*, 632 N.W.2d 676, 689 (Minn. 2001) (noting trial counsel's alleged failure to vigorously cross-examine a witness and object to certain testimony are matters of trial strategy). Appellate courts generally do not consider claims of ineffective assistance of counsel based on trial strategy. *See, e.g.*, *Andersen v. State*, 830 N.W.2d 1, 13 (Minn. 2013) (explaining that claims of an attorney's alleged failure to "investigate the case" and to "call exculpatory witnesses or impeach adverse witnesses" were not reviewable because "the conduct at issue arguably falls within trial strategy").

Even so, mother has not demonstrated that her counsel's performance fell below an objective standard of reasonableness. First, regarding trial counsel's decision to not call mother as a witness at trial, mother claims that her attorney told her that she did not need to testify because the WCHS social worker had discredited herself. While we acknowledge that the district court did find the social worker to be credible, mother has not shown, based on the testimony at trial, that her counsel's advice that mother refrain from testifying was objectively unreasonable. Furthermore, claims of ineffective assistance of counsel based

14

on a failure to call a particular witness—as mother argues here—"are of the type we have repeatedly declined to recognize as amounting to ineffective assistance of counsel." *State v. Miller*, 666 N.W.2d 703, 717 (Minn. 2003).

Similarly unpersuasive are her claims that her counsel did not "introduce material evidence, [or] challenge false reports." The trial record reflects otherwise. The record shows that mother's counsel offered a number of exhibits at trial pursuant to a stipulation with WCHS. And, as the district court noted in its order denying mother's motion for a new trial, many of the other documents that mother thought should have been offered by her counsel were offered by WCHS and admitted by the district court. Others were irrelevant. In sum, there is no basis to conclude that counsel was ineffective for failing to offer material evidence.

Likewise, mother has not demonstrated that her counsel was ineffective for failure to challenge "false reports" by the social worker and GAL. As the district court noted in its order, the record reflects that mother's counsel cross-examined both witnesses extensively. And "failure to conduct cross-examination in a certain manner and failure to investigate certain witnesses" are matters of trial tactics and "do not demonstrate ineffective counsel." *State v. Irwin*, 379 N.W.2d 110, 115 (Minn. App. 1985), *rev. denied* (Minn. Jan. 23, 1986).

Consequently, we conclude that mother did not demonstrate that her trial counsel's performance fell below an objective standard of reasonableness and therefore she did not meet the first *Strickland* prong. This conclusion is sufficient to reject mother's argument based on ineffective assistance of counsel. But because the district court focused its

analysis on the second *Strickland* prong, we also consider this prong and agree with the district court that mother failed to meet this prong as well.

Mother claims that the outcome at trial would have been different if her counsel had "presented the full defense." Mother does not specify what she means by a "full defense" but we interpret her argument to include efforts by counsel to introduce additional exhibits, challenge the "false reports," and call her as a witness to testify. We agree with the district court's finding that mother has failed to demonstrate that this additional evidence would have changed the result in the TPR proceeding. At the hearing on her motion for a new trial, mother told the district court that, if she had testified at trial, she would have testified to the reasons that she missed some of her scheduled visits with the children and her concerns about the social worker and GAL. But the district court's decision to terminate mother's parental rights relied heavily on her failure to maintain sobriety and the impact of that failure on her ability to parent. Mother fails to show how her testimony would have altered the district court's finding that she failed to maintain her sobriety or its decision to terminate her parental rights. Similarly, mother has not pointed to any potential exhibits that would have changed the outcome. Lastly, there is no basis to conclude that the outcome would have been different if her counsel had engaged in additional cross-examination of the WCHS witnesses. Accordingly, mother has not shown that there is a reasonable probability that, but for counsel's alleged errors, the outcome of the TPR petition would have been different. Where an appellant fails to show prejudicial error, the claim of ineffective assistance of counsel fails. *State v. Blanche*, 696 N.W.2d 351, 376 (Minn. 2005).

For these reasons, we conclude that the district court did not abuse its discretion when it determined that mother's ineffective-assistance-of-counsel claim does not provide a basis for a new trial.

*Due Process*

Mother also argues that the district court abused its discretion when it denied her request for a new trial based on due process concerns. Specifically, she claims that she was denied her constitutional right to due process "when the trial court silenced her testimony and excluded her exhibits" and thereby deprived her of "a fair opportunity to be heard and to present evidence."

In the context of a TPR proceeding, "[d]ue process requires reasonable notice, a timely opportunity for a hearing, the right to counsel, the opportunity to present evidence, the right to an impartial decision-maker, and the right to a reasonable decision based solely on the record." *In re Welfare of Child. of D.F.*, 752 N.W.2d 88, 97 (Minn. App. 2008). "Although the amount of process due in a particular case varies with the unique circumstances of that case, prejudice as a result of the alleged violation is an essential component of the due process analysis." *In re Welfare of Child of B.J.-M.*, 744 N.W.2d 669, 673 (Minn. 2008) (citations omitted).

In its order denying mother's motion for a new trial, the district court concluded that mother had not demonstrated due-process violations at trial. The district court noted that aside from her ineffective-assistance-of-counsel claim, mother did "not meaningfully articulate any other violation of her due process rights." The court further explained that, because mother had the opportunity to present evidence favorable to her case, there was no

17

basis upon which to grant her a new trial. We discern no abuse of discretion in the district court's decision.

Here, the record reflects that the district court afforded mother due process and took great efforts to ensure mother's rights were protected throughout the trial. Indeed, when mother requested a new attorney on the day trial was scheduled to begin, the district court granted mother a continuance to ensure her rights would be protected. Additionally, the record reflects that mother received timely notice of the trial, had an opportunity to present evidence, had an impartial trial judge, and a decision based solely on the record.

We also note that there is no support for mother's contention that the district "court silenced [mother's] testimony." Rather, as mother acknowledges elsewhere in her own brief, her counsel made a strategic decision to not call her as a witness and mother agreed. The district court did not preclude mother from testifying. And due process does not require mother to testify at trial. In fact, due process does not compel the physical attendance of a parent at a termination proceeding, particularly in cases where the parent is represented by counsel—as was the case here. *See In re Welfare of A.Y.-J.*, 558 N.W.2d 757, 759 (Minn. App. 1997) (holding that "due process does not compel the physical attendance of a parent at termination proceedings"), *rev. denied* (Minn. Apr. 15, 1997). Furthermore, the district court permitted mother to offer exhibits at trial even without mother's testimony. In short, we conclude that the district court did not abuse its discretion when it determined that mother failed to demonstrate a due-process violation entitling her to a new trial.

*Claims of False Testimony*

Mother also argues that the district court abused its discretion by not ordering a new trial based on fraud on the court. Specifically, mother contends that the "district court erred by relying on demonstrably false statements—such as falsified test results and contradictory GAL summaries" and therefore she is entitled to a new trial based on fraud. The district court did not rule on this matter because mother raised the issue only in an affidavit submitted after filing her motion for a new trial. Given that mother did not allege to the district court that she was entitled to a new trial because of fraud, the issue is not properly before this court. *Thiele v. Stich*, 425 N.W.2d 580, 582 (Minn. 1988) (holding that we generally do not entertain arguments that were not "presented and considered by" the district court).

But even if the issue was timely raised, it is not adequately briefed. Mother only makes passing reference to the court's reliance on "demonstrably false statements—such as falsified test results and contradictory GAL summaries." And while her supplemental briefing, which was deemed part of her principal brief by this court, makes reference to over twenty allegedly fraudulent statements made by the GAL and the social worker at trial, she fails to demonstrate how the statements were fraudulent beyond conclusory statements.[6] This court declines to "consider pro se claims on appeal that are unsupported by either arguments or citations to legal authority." *State v. Bartylla*, 755 N.W.2d 8, 22

---

[6] An order of this court allowed mother to supplement her principal brief with additional arguments made in a motion filed with this court. We deemed pages 7-13 of the motion to be part of mother's principal brief.

(Minn. 2008). Lastly, to the extent that mother is challenging the district court's determination that both the GAL and the social worker testified credibly, we defer to the district court's credibility determinations. *Butler v. Jakes*, 977 N.W.2d 867, 871 (Minn. App. 2022) ("We defer to the district court's credibility determinations and do not reconcile conflicting evidence." (quotation omitted)).

Accordingly, we discern no abuse of discretion in the district court's decision to decline to grant mother a new trial based on her assertions of fraud on the court.

*Venue*

Mother also appears to argue that venue in Wadena County, where the trial was held, was improper and that the district court "lacked jurisdiction." The district court did not abuse its discretion in denying mother's request for a new trial on this basis.[7]

The legislature has specified the venue for child protection matters. "When it is alleged that a child is in need of protection or services, venue may be *in the county where the child is found*, in the county of residence, or in the county where the alleged conditions causing the child's need for protection or services occurred." Minn. Stat. § 260C.121, subd. 1 (2024) (emphasis added). Here, it is undisputed that the children were found in Wadena County. And WCHS brought its CHIPS petition and the TPR petition in Wadena

---

[7] For purposes of this appeal, we assume both that (a) mother uses the word "jurisdiction" to refer to subject-matter jurisdiction; and (b) what mother asserts is that erroneous venue for the case could deprive the district court of subject-matter jurisdiction. We note, however, that venue is "the proper or a possible place for a lawsuit to proceed[,]" *Black's Law Dictionary* 1876 (12th ed. 2024), and that, unlike subject-matter jurisdiction, venue is not jurisdictional, *Peterson v. Holiday Recreational Indus., Inc.*, 726 N.W.2d 499, 504 (Minn. App. 2007), *rev. denied* (Minn. Feb. 28, 2007).

County. Therefore, venue in Wadena County was proper and the district court had jurisdiction over the proceeding.

Furthermore, as the district court noted in its order denying the motion for a new trial, mother's challenge to venue was untimely. Failure to timely object to improper venue may constitute a waiver of the objection. *Rosnow v. Comm'r of Pub. Safety*, 444 N.W.2d 591, 592 (Minn. App. 1989), *rev. denied* (Minn. Oct. 13, 1989).

For these reasons, the district court properly rejected mother's argument based on improper venue.

*Conclusion*

In sum, the district court did not abuse its discretion in denying mother's request for a new trial. Mother's claims of ineffective assistance of counsel, due-process violations, fraud on the court, and improper venue do not establish an adequate basis for reversal.

**Affirmed; motion denied.**